The STATE OF MONTANA, Plaintiff and Respondent, v.
JOSEPH R. CAMPBELL, Defendant and Appellant.
No. 10792.
Submitted June 21, 1965. Decided September 2, 1965.
Rehearing denied October 15, 1965.
405 P.2d 978.

John H. Jardine (argued), Whitehall, Frank M. Davis (argued), Dillon, Wellington D. Rankin (argued), Rankin & Acher, Arthur Acher (argued), Helena, for appellant.

Forrest H. Anderson, Atty. Gen., Alfred Coate (argued), Helena, Chester L. Jones (argued), Virginia City, Carl M. Davis (argued), County Attys., Dillon, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from a judgment of conviction of murder in the first degree entered upon a jury verdict and from an order denying a new trial. The defendant received a sentence of life imprisonment.

The information charged the defendant with the murder of one Margaret Seyler. It was filed in Madison County where

the alleged crime occurred. The trial was held in the bordering County of Beaverhead.

The deceased was a 36 year old widow, the mother of five children. The defendant and the deceased were involved in a romance and had been engaged to be married. The evidence indicates, however, that there had been a deterioration of this relationship during the last few months before her death. Violent arguments had arisen between them. Witnesses had seen the defendant strike the deceased. She had, on a number of occasions, gone to the house of a friend during the night. On one such occasion her lip was swollen and bleeding. She had ceased to wear an engagement ring given her by the defendant. Three days before the tragedy they were observed quarreling on a public street.

The deceased worked as a waitress at the Blue Anchor Bar and Cafe in the town of Twin Bridges. The Blue Anchor is bordered on the front by the main street of Twin Bridges, which is also Montana Highway 41. An alley lies at the side of the establishment and intersects the main street. It was the defendant's practice to enter the cafe late at night when the deceased was on duty and have a cup of coffee. On the night of August 31, and early morning of September 1, 1963, the deceased was to get off work at 1:00 o'clock in the morning. Actually she worked a short while past that time. She then sat down for coffee with another waitress and the cook. Both the waitress and the cook testified that while they were having coffee, they observed the defendant walking past the Blue Anchor and looking in the window of the cafe. This occurred at about 1:25 a. m. The waitress testified that she had seen the defendant's car parked in front of the Blue Anchor that night, but that it was no longer there at this time.

Somewhere around 1:30 a. m. the deceased left the Blue Anchor carrying a can filled with food scraps for her dog. She had parked her car in a wide spot in the alley next to the Blue Anchor.

At 2:15 in the morning, Charles Whitney, Twin Bridges town

marshal, parked his car on the main street near the Blue Anchor. He detected someone calling his name. Following the voice he found the defendant, lying on the ground in front of the deceased's car, with two bullet wounds in his chest. Whitney testified that the defendant said "Where is Margaret, go find Margaret." Whitney, knowing this to mean the deceased, entered the Blue Anchor in search of her. While there he told the occupants of his discovery. John Gornick, who had played the drums in the bar that night, upon hearing the news, went out into the alley. Angel Wright, who had tended bar, followed close behind. Both heard the defendant say "Where is Margaret?" and then "Margaret's in the car." Turning to the deceased's car, Gornick found her sitting upright in the passenger seat, dead of a gunshot wound through the heart.

The defendant's car was parked parallel to that of the deceased, thirteen feet away from it. A .22 calibre pistol, testified to as being identical to one owned by the defendant was found against a board fence a few feet from where he lay. Bullets removed from both parties were declared by a ballistics expert to have been fired from the same type of weapon. The testimony indicated that the defendant generally kept the gun in the jockey box of his car. A son of the deceased had seen it late that August lying on the seat of the defendant's car.

When the deceased was discovered, the doors to her car were closed and the windows rolled up. The bullet that killed her entered her body about midway on the left chest and traveled diagonally across the body toward the back right chest. The testimony indicated that, holding a gun in her right hand, she could not have inflicted such a wound upon herself. The testimony established that the deceased was right handed. During the course of its flight, the bullet penetrated both the pericardial sac which surrounds the heart and the aorta. The pericardial sac filled with blood instantly. This, according to the physician who performed the autopsy, caused almost immediate death. It would be "highly unlikely," he said, that one could

inflict such a wound upon oneself, throw the gun out of the car and close a door.

There were no signs of a struggle within or without the car. The can of dog scraps was sitting neatly between the deceased's feet. There were no marks on her body other than the single bullet wound. It had rained some that night, yet the terrain around the death scene was virtually undisturbed.

The bullets that hit the defendant were fired at close range, probably from within an inch of his body. They entered the left chest about two inches apart, just above the nipple. They traveled toward the left side of the body and slightly downward. Their flight was parallel. An expert in forensic medicine testified that these facts indicated a suicide attempt. For another party to have inflicted the wounds, he would have had to have stood above the defendant and fired downward. Further, the expert testified, a person being shot from such a short distance almost certainly would have attempted to resist; would have done something involving body movement between shots. Because of this it is almost inconceivable that the bullets would have been fired from the same distance and taken parallel courses. On the other hand a right-handed person, as the defendant was, could have fired two shots such as these into his own body.

On this appeal defendant-appellant sets forth thirty-two specifications of error and groups them into separate arguments which shall provide the format for this opinion.

His first contention is that there was insufficient evidence of deliberation and premeditation to support the verdict; that the State must establish these elements to sustain a conviction of murder in the first degree is not disputed. State v. Gunn, 85 Mont. 553, 281 P. 757. However, deliberation and premeditation may be inferred from the facts and circumstances attending the killing. State v. Cates, 97 Mont. 173, 33 P.2d 578. In this case there was, if believed, substantial evidence pointing to a conclusion that there was deliberation and premeditation on the part of the defendant. The fact that the engagement

between the defendant and the deceased appeared to be experiencing turbulent times, perhaps had been broken off altogether; that they had been seen arguing a few days before the tragedy; that on the fatal night the defendant was seen peering into the car; that he did not come into the cafe, contrary to his practice; that his car was observed in front of the cafe and was later found parked at the side of the Blue Anchor next to that of the deceased; that there were no signs of a struggle; that the defendant's gun was missing from the place where he kept it and a gun similar if not identical was found on the ground near him; that it, without doubt, delivered the fatal wound; all of these facts and others adequately support the jury's conclusion that there was deliberation and premeditation.

Next, it is alleged that the instruction defining premeditation as "thought of beforehand for any length of time, however short" was erroneous. It is argued by the defendant that this is a paraphrasing of the legal concept to the effect that premeditation and deliberation can occur in the same instant that the fatal act is committed. He maintains that the better view is that the killing is deliberate and premeditated only if it results from real and substantial reflection over a period of time and that the jury should have been so instructed. It is our opinion that deliberation and premeditation in an instant is not involved in this case. The evidence, related above, which tended to prove these elements, refers to occurrences and actions which took place a substantial period of time before the shooting. Almost all of the facts indicate that deliberation and premeditation occurred before the deceased ever left the cafe. Only the procurement of the weapon might have happened after that. Even then, it would have taken several seconds for the defendant to get the pistol from his automobile and go to the deceased's car to shoot her. The physical facts in evidence indicate however, this too transpired before she came out of the cafe. There is nothing to suggest that this crime occurred upon a sudden quarrel or heat of passion. Everything in the State's case points to a "lying in wait"; to a decision to kill some con-

siderable time before it was carried out. If the jury found, as they did, that there was deliberation and premeditation, then the defendant is guilty under either theory. Therefore, the instruction even if it be assumed to be error as embodying the "formed in an instant" rule, was not prejudicial.

■■ The third question on this appeal is: Can opinion evidence on the subject of whether a wound was or was not self-inflicted be admitted? This topic is well covered by an Annotation at 56 A.L.R.2d 1447. It is revealed there that fourteen states and England have answered this question yes. Ibid. at 1449. Seven jurisdictions have held in the negative. Ibid. at 1455, 1456. We feel that the majority view is supported by the better reasoning. The basic rule on the admissibility of expert opinion is whether the subject is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness, or whether the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact. People v. Cole, 47 Cal.2d 99, 301 P.2d 854, 56 A.L.R.2d 1435. See also Copenhaver v. Northern Pacific Ry. Co., 42 Mont. 453, 113 P. 467; 7 Wigmore on Evidence (3rd ed. 1940), § 1923, p. 21. We agree with the courts that conclude that the subject of self-inflicted wounds is not one of such common experience that laymen may not be assisted by the opinion of a doctor, who has special knowledge regarding anatomy and injuries to the human body. See, for example, People v. Cole, supra. And it matters not that such an opinion involves an ultimate issue of fact. Kelly v. John R. Daily Co., 56 Mont. 63, 181 P. 326. And see Krohmer v. Dahl, 145 Mont. 491, 402 P.2d 979.

Appellant relies on State v. Ratkovich, 111 Mont. 19, 105 P.2d 679. In that case this court held that it was error to allow a physician to testify as to whether a wound was inflicted by criminal means or was the result of an accident. The prosecution maintained that death was caused by a blow from a hammer. The defense was that the deceased fell and hit his head on a rock. The doctor testified that death was the result of a

blow from a blunt instrument. We cannot see a material distinction between the testimony given in that case and that here objected to. Therefore we hold that State v. Ratkovich was wrongly decided on this point and that the rule here espoused should prevail.

Defendant next contends that the admission into evidence of a bullet taken from his body violated his constitutional rights to due process of law and protection against self-incrimination and unreasonable search and seizure. The bullet was removed at his request by Dr. Richard McLaren. The doctor kept it for the defendant until turning it over to law enforcement officials, pursuant to a court order.

With regard to self-incrimination, it has long been the rule of both state and nation that this privilege extends only to "testimonial" or "verbal" compulsion and does not include "real" or "objective" evidence. State v. Fuller, 34 Mont. 12, 85 P. 369, 8 L.R.A., N.S., 762; Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed 1021. However, the manner in which such evidence is obtained must be consistent with the requirements of due process. Rochin v. People of California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396. In the Rochin case officers forcibly pumped the defendant's stomach against his will, thereby recovering two capsules containing narcotics. Mr. Justice Frankfurter, speaking for the majority of the Court, said:

"* * * we are compelled to conclude that the proceedings by which this conviction was obtained do more than offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically. It is conduct that shocks the conscience. Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents—this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation." 342 U.S. at 172, 72 S.Ct. at 209.

■ It can hardly be said that obtaining by court order from a third party, a bullet which the appellant voluntarily had removed from his body "shocks the conscience" or approaches "the rack and the screw."

As to the question of search and seizure, there is no showing that the court order to produce the bullet did not issue in accordance with the law.

■ The same rules apply to uphold the admission into evidence of X-ray photographs taken of the appellant while he was in the hospital undergoing treatment for his wounds.

■ Also in connection with the admission of the bullet and X-rays, appellant urges that the physician-patient privilege was violated. We hold with the great weight of authority that this privilege is not available to appellant in a criminal prosecution. See Anno.: 45 A.L.R. 1357, superseded in 2 A.L.R.2d 647. The applicable statute in Montana is R.C.M.1947, § 93-701-4, which provides in part:

"There are particular relations in which it is the policy of the law to encourage confidence and preserve it inviolate; therefore, a person cannot be examined as a witness in the following cases:

"* * *

"4. A licensed physician or surgeon cannot, without the consent of his patient, be examined in a *civil* action as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient."

R.C.M.1947, § 94-7209, provides:

"The rules of evidence in civil actions are applicable also to criminal actions, except as otherwise provided in this code." Section 94-7209, by its language, incorporates into criminal procedure all that is applicable of Title 93, the Code of Civil Procedure. The one qualification is "except as otherwise provided by this code." Section 93-701-4 sets forth five privileged relationships in addition to that of physician-patient. Only in the case of the physician-patient (subsection 4) and one other relationship (subsection 6) is the qualifying language "in a civil

action" used. This would seem to be the kind of language limiting a rule to civil procedure alone as was contemplated in the provision in section 94-7209, "except as otherwise provided in this code." Such a construction is consistent with that given to essentially the same statutes by the State of California. See People v. West, 106 Cal. 89, 39 P. 207; People v. Dutton, 62 Cal.App.2d 862, 145 P.2d 676.

■■■■ Appellant's next argument is that a photograph taken of deceased on the mortuary table was inflammatory and thus should not have been admitted in evidence. We find no merit in this contention. Photographs are admissible for the purpose of explaining and applying the evidence and assisting the court and jury in understanding the case. Fulton v. Chouteau County Farmers' Co., 98 Mont. 48, 37 P.2d 1025. When the purpose of an exhibit is to inflame the minds of the jury or excite the feelings rather than to enlighten the jury as to any fact, it should be excluded. State v. Bischert, 131 Mont. 152, 308 P.2d 969. There is no evidence in this case that the photograph complained of was calculated to "inflame the minds of the jury." Rather, it assisted the jury in understanding a point in issue, to wit, the position of the wound which caused the deceased's death. The State had the burden of proving all the elements of the crime beyond a reasonable doubt. The photograph aided in showing that the crime was committed in the manner described by witnesses. Further, it was relevant to the question of deliberation and premeditation.

■■■■ Appellant maintains that it was error for the court to give the following instruction: "Evidence, if any, that the defendant did, subsequent to the commission of the crime, attempt to take his own life may be considered by the jury as a circumstance tending to prove consciousness of guilt, but is not sufficient, of itself, to prove guilt. The weight to be given to such circumstance, and the significance, if any to be attached to it are matters for the jury to determine." This instruction embodies the well-established rule permitting the admission of such evidence. See 22A C.J.S. Criminal Law § 630, p. 478, and

cases cited therein; 1 Wharton's Criminal Evidence, 12 ed. 210, p. 431, and cases cited therein.

The defendant contends that a person who caused the death of a loved one by accident might commit suicide as readily as one who committed murder. We have already seen, however, that the evidence in this case indicates murder while ruling out accident or suicide. Moreover, the instruction merely tells the jurors that they "may" consider evidence of an attempted suicide as tending to prove consciousness of guilt, determining for themselves the weight and significance "if any" to be given to such evidence.

The defendant relies on the case of State v. Coudotte, 7 N.D. 109, 72 N.W. 913, which held that an attempt to commit suicide while in confinement awaiting trial could not be taken to raise a presumption of guilt. Of that case it was commented in State v. Plunkett, 62 Nev. 265, 280, 149 P.2d 101, 108, that "this is a lone case [State v. Coudotte] which is distinguishable from the generality of authority on the point of attempted suicide by an accused being a circumstance in a homicide case proper to be considered by the jury in connection with all the evidence. * * * There were no other facts or circumstances with which it could be considered by the jury as tending to show guilt, and to be given such weight, or no weight, as the jury might determine. It was sought to be proven as an isolated circumstance sufficient in itself to furnish the corroboration of the testimony of an accomplice, required by the statute, as to the guilt of an accused The court held that it was not enough and reversed the case. As pointed out in State v. Painter [329 Mo. 314, 44 S.W.2d (79) 82], in reviewing the Coudotte case:

" 'The court was not called upon to and did not decide whether or not, had there been otherwise a submissible case made, the attempt to commit suicide might have been proved as a circumstance for the consideration of the jury.' "

Defendant argues further that the instruction is error because it assumes as proven a disputed case, namely, that defendant committed the crime. He relies on State v. Bonning,

60 Mont. 362, 199 P. 274, 25 A.L.R. 879, where a similarly worded instruction to the effect that flight after the crime could be considered as a fact tending to establish guilt was held to assume that the defendant committed the offense alleged. Insofar as the case of State v. Bonning stands for the proposition that such an instruction assumes the crime to have been committed, it is hereby overruled. Other instructions in both that case and this one adequately inform the jury that the fact of the crime, and its commission by the defendant, must be established beyond a reasonable doubt.

Defendant next objects to the testimony of a neighbor to whose house the deceased sometimes went during the night, that on one such occasion the deceased's lip was swollen and bleeding. Defendant assumes that he inflicted the injuries, otherwise there could be no prejudice. Defendant's theory is that this is evidence of a previous crime, not generally admissible in evidence. State v. Ebel, 92 Mont. 413, 15 P.2d 233. The rules as to admissibility of previous offenses are not applicable here, and the trial court so ruled.

Next, the defendant cites as error an instruction given by the court that since the State had waived the death penalty the punishment for murder in the first degree in this case would be life imprisonment. At the time the trial court proposed to give this instruction counsel for the defendant made the following objection which was overruled: "We are going to object to this on the ground that there is no evidence of first degree murder, and furthermore we know of no point in this case where the State has waived the death penalty and that the jury would be perfectly at liberty to bring in the death sentence." The defendant now argues on appeal that neither the State nor the court has authority to waive the death penalty. It is not necessary for us to pass on this point, since we cannot reverse the lower court's ruling on an instruction on grounds not raised at the time the instruction was proposed. This point is controlled by the case of State v. Bubnash, 142 Mont. 377, 396, 382 P.2d 839, wherein it is held:

"This court is precluded by a specific statute from considering the defendant's last-quoted objection not made in the trial court but advanced for the first time on the instant appeal to this court.

"Section 94-7201, subd. 4, R.C.M.1947, in part, provides:

" '* * * On such settlement of the instructions the respective counsel, or the parties, shall specify and state the particular ground on which the instruction is objected or excepted to, and it shall not be sufficient in stating the ground of such objection or exception to state generally that the instruction does not state the law, or is against the law, but such ground of objection or exception shall specify particularly wherein the instruction is insufficient, or does not state the law, or what particular clause therein is objected to. * * *

" '* * * no cause shall be reversed by the Supreme Court for any error in instructions which was not specifically pointed out and excepted to at the settlement of the instructions herein specified * * *.'

"Only objections made at the time of the settlement of the instructions may be considered by this court on appeal."

As to the argument that there was no evidence of first degree murder, we have already pointed out a considerable number of facts and circumstances supporting a first degree conviction.

Defendant specifies as error the court's refusal to give an instruction to the effect that verbal admissions ought to be received with caution. This may be disposed of by pointing out that such an instruction was given. State's proposed instruction number 25, given without objection, reads in part: "* * * you are instructed * * * that the evidence of oral admissions of a party ought to be viewed with caution * * *."

The same is true of defendant's complaint that two proposed instructions should have been given to the effect that if the jury had reasonable doubt as to the cause of death they should not convict the defendant. This is adequately covered by defendant's proposed instruction number 12-A which was given and reads: "If you find that the evidence is fairly susceptible to

the interpretation that death was accidental or as the result of suicide, or caused by a third person, then it is not sufficient to warrant a conviction, for the reason that in order to convict a defendant he must be proved guilty of the crime charged beyond a reasonable doubt. He cannot be convicted when the evidence is fairly susceptible to an interpretation which will prove innocence as well as guilt." Moreover, there were at least nine separate instructions advising the jury that the defendant could not be convicted unless proven guilty beyond a reasonable doubt.

Defendant next contends that the instruction on circumstantial evidence was incomplete. It reads in part: "Crime may be proven by circumstantial evidence that convinces beyond a reasonable doubt as well as by direct testimony of eyewitnesses, but the facts and circumstances in evidence should be consistent with each other and with the guilt of the defendant, and inconsistent with any reasonable theory of the defendant's innocence."

Defendant argues that this instruction was incomplete in that it failed to state that the circumstances *must* exclude every reasonable hypothesis other than guilt.

When instructions were being settled the following is the record with reference to this proposed instruction:

"MR. JARDINE: Can we make an objection?

"THE COURT: Yes, you may.

"MR. JARDINE: First of all, the corpus delicti in a murder case cannot be proved by circumstantial evidence; secondly this last sentence provides that crime may be proven by circumstantial evidence as well as by the direct testimony of eye witnesses, et cetera. We feel that it should say 'Crime may be proven by circumstantial evidence that convinces beyond a reasonable doubt.'

"THE COURT: All right, I will further amend the instruction by inserting the words 'that convinces beyond a reasonable doubt' after the words 'Crime may be proven by circumstantial

evidence' in the last sentence of the instruction and as so amended the instruction will be given."

No objection was made to the instruction as amended on request of defendant. This being so, it cannot now be attacked. Only objections made at the trial on settlement of the instructions may be considered by this court on appeal. State v. Bubnash, supra.

Appellant also alleges that the corpus delicti was not proven. R.C.M.1947, § 94-2510, provides:

"No person can be convicted of murder or manslaughter unless the death of the person, alleged to have been killed, and the fact of the killing by the defendant as alleged, are established as independent acts; the former by direct proof, and the latter beyond a reasonable doubt." An instruction in this language was given to the jury. The death was established by direct proof. That death was occasioned by a criminal agency may be established by either direct or circumstantial evidence. State v. Cates, 97 Mont. 173, 33 P.2d 578. As already noted, the jury was properly instructed that the facts and circumstances had to convince beyond a reasonable doubt that the defendant was guilty to the exclusion of all other reasonable theories as to the cause of death.

Finally, there is a question of venue which we will discuss briefly because it was brought out on oral argument. On November 15, 1963, a hearing was held on a petition of the defendant for change of place of trial. The contention was that a fair trial could not be had in Madison County because of prejudicial feeling aroused by the death of Mrs. Seyler. The primary reason cited for this feeling was the fact that the deceased's husband and brother-in-law had been similarly slain in almost the same spot a decade before. An itinerant trapper was prosecuted for the killings but was acquitted on a plea of self defense. It was complained that many citizens of the county felt that this was a "miscarriage of justice" and were determined that it would "be corrected when the defendant Campbell was tried." The Honorable Philip C. Duncan, Dis-

trict Judge of the Fifth Judicial District, qualifiedly denied the motion on the grounds that prejudice was likely to subside by the time trial was held and the probability that the next jury term in the district would be in Beaverhead County. The Judge's order read in part:

"It is therefore ordered that defendant's motion for change of place of trial is qualifiedly denied, the qualifications being:

"(1) The right of the defendant, if a jury term is called in Beaverhead County prior to the next jury term in Madison County, to change of place of trial to Beaverhead County for trial of his case in Beaverhead County, at such Beaverhead County jury term, if defendant so moves; (2) the right of defendant if he foregoes his right to change of place of trial to Beaverhead County, or such right should not accrue, to renew his motion for change of place of trial at the time his case is set for trial in Madison County.

"Dated December 10, 1963."

Subsequently the defendant filed this request for speedy trial: "The above-named defendant, having been advised that a jury has been called for the trial of cases in Beaverhead County, does hereby elect to be tried at said jury term in Beaverhead County, and does hereby request the court to change the place of trial of this cause from Madison County to Beaverhead County, and set an early date for the trial thereof.

"This election is made pursuant to the order of the court made and entered herein on the 10th day of December, 1963."

The defendant, as reflected above, did not elect to renew his motion for change of venue, but rather elected to be tried in Beaverhead County. He will not now be heard to complain.

Having found no error prejudicial to the defendant, the judgment of conviction and order denying a new trial are affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON, ADAIR and CASTLES concur.