No. 13063

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

HAROLD ARMSTRONG,

Defendant and Appellant.

---

Appeal from: District Court of the Thirteenth Judicial District,
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

John R. Prater argued, Terry, Montana
Donald W. Molloy argued, Law Student, Missoula,
Montana
Robert C. Pfer argued, Law Student, Missoula, Montana
Daniel A. Piedalue argued, Law Student, Missoula,
Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
William J. Anderson argued, Assistant Attorney General,
Helena, Montana
Harold Hanser argued, County Attorney, Billings,
Montana

---

Submitted: June 4, 1976

Decided: JUL 20 1976

Filed: JUL

Thomas J. Kearney
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant was convicted by jury verdict of deliberate homicide and robbery in the district court, Yellowstone County. Judge Charles Luedke sentenced him to consecutive prison terms of 100 years for deliberate homicide and 40 years for robbery. Defendant appeals from the judgment of conviction.

Because no eye-witness accounts of the crimes charged were presented at the trial, the state's case was built upon testimony concerning the events preceding and following the crimes, the physical evidence related thereto, and evidence regarding police investigations.

We will only set forth those facts pertinent to this appeal which are established by the record.

At about 8:00 a.m. on January 22, 1975, the body of the victim of the crimes involved, Lynn Lords, was found in a boiler room located in an alley in Billings, Montana. There were multiple stab wounds in Lords' neck, chest and back; the cause of his death was determined to be massive blood loss from a wound in the neck. The weapon causing the stab wounds was medically determined to be a relatively heavy-duty knife of some sort.

Lords had participated in a poker game at the Crystal Lounge in Billings on the preceding night, January 21-22, 1975. He played until approximately closing time then cashed in chips with a value of between two hundred and four hundred dollars. The defendant participated in the same poker game, cashed in no more than about thirty dollars worth of chips at the end of the game.

During the few days prior to the poker game, the defendant had indicated to at least two witnesses that he was without funds and had written checks on a bank account with insufficient funds. He had recently been laid off from his job.

- 2 -

The defendant and Lords separately entered the Crystal Lounge early on the evening of January 21, 1975; they apparently left separately and by different exits at about 2:00 a.m., January 22. When defendant first entered the establishment on January 21 he was wearing a blue coat and a gun belt with a pistol and hunting-type knife therein. The belt, gun and knife were left at the bar and the pistol was given to a Crystal employee as security for a loan of money to defendant. The knife was returned to defendant at about 12:30 a.m.; the gun was never returned to him.

Shortly after 2:30 a.m., January 22, the defendant drove his vehicle into a service station in Billings. He requested the attendant to perform certain repair work on the vehicle, for which defendant paid in cash, giving a twenty-dollar bill and having considerable other money in his possession. He also cleaned his vehicle and washed the floor mats and a pair of boots with water. The attendant later retrieved some articles from a wastebasket which defendant had apparently thrown away.

On the afternoon of January 22, 1975, defendant was arrested for shoplifting a blue coat from a hardware store in Billings. When he entered the store he was not wearing a coat. The investigation relating to the shoplifting arrest eventually led to the charges involved in the instant case.

The trial lasted six days and involved the testimony of 39 state witnesses and the admission of 55 state exhibits and two defense exhibits. Fourteen Billings police officers testified for the state on various aspects of the investigation of the crimes and of defendant's shoplifting arrest. Counsel for the defense made no opening statement, and rested at the close of the state's case in chief. The defendant did not testify.

The jury returned guilty verdicts on both crimes charged.

After sentencing, defendant made motion for a new trial, which was denied.

The issues on appeal are as follows:

1. Were the prosecutor's comments to the jury on closing argument tantamount to comments on the failure of defendant to testify and therefore in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article II, Section 25, 1972 Montana Constitution?

2. Did the district court commit prejudicial error in admitting evidence of other acts or conduct of the defendant?

3. Did the district court commit prejudicial error in admitting into evidence a coat and testimony pertaining to the alleged theft of the coat?

4. Did the district court err in its failure to instruct the jury on the elements of theft in the course of its instructions on the elements of robbery?

5. Was the testimony of 14 police officers so unnecessary and unduly prejudicial as to deny the defendant a fair trial?

The first issue concerns certain remarks made by the county attorney during his closing argument to the jury. It is beyond question that the prosecution is strictly prohibited from commenting on a defendant's failure to testify, for such comment may negate the presumption of a defendant's innocence in violation of his right to remain silent under the Fifth Amendment of the United States Constitution. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L ed 2d 106. This federal constitutional right inures to the benefit of defendants in state courts by reason of the Fourteenth Amendment to the United States Constitution. Griffin, supra; State v. Hart, 154 Mont. 310, 316, 462 P.2d 885. The Montana constitutional guaranty affords no greater protection than that of the Federal constitution. State

- 4 -

v. Anderson, 156 Mont. 122, 125, 476 P.2d 780. In Anderson this Court said that the test of the propriety of a prosecutor's comments is:

"' * * * whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'"

In Hart, we found reversible error in the prosecutor's comment that the defendant's attorney did not see fit to offer any evidence to controvert the story of a policeman who testified to searching the defendant and finding incriminating evidence. The foundation of that decision was that any controverting evidence " * * * could only come from the defendant himself * * *." In so holding, the Court relied upon two federal cases: Desmond v. United States, 345 F.2d 225, 14 ALR3d 718 (First Cir. 1965), and Rodriguez-Sandoval v. United States, 409 F.2d 529 (First Cir. 1969). In both cases convictions were reversed because comment was made that direct testimony of prosecution witnesses was not contradicted. In all three cases, the uncontradicted testimony commented upon concerned situations where the government witness and the defendant himself were present and no other witnesses to the particular occurrences were available. Thus, the inference to be drawn from such comments is that the defendant's failure to testify negates the presumption of innocence.

In the instant case the facts are significantly different. In the first place the county attorney never made reference to defendant's failure to testify nor to defense counsel's failure to call defendant to the witness stand. Second, there was no reference to the uncontradicted nature of the testimony of any witness who was present with the defendant during or immediately after the crimes as was the case in Hart, Desmond and Rodriguez-Sandoval.

While it is true that the county attorney often asked

- 5 -

rhetorical questions which amounted to comments that there was "no evidence" or "no testimony" to rebut the inferences raised by the state's evidence, nowhere does it appear that these comments would necessarily imply that defendant was the only source which could negate state's evidence. The most that can be said of the county attorney's comments is that they referred to the fact that the defense presented no case at all. Certainly the prosecution, as an adversary for the state, cannot be prohibited from arguing the strength of its case to the jury. The manifest fact that the defense presented no testimony of its own may be detrimental to the defendant, but such fact cannot deny the prosecution its right to stress the strength of its own evidence. Compare: United States ex rel. Leak v. Follette, 418 F.2d 1266 ( 2d. Cir. 1969), cert. den. 397 U.S. 1050, 90 S.Ct. 1388, 25 L ed 2d 665.

Thus, we hold that the county attorney's comments regarding the absence of controverting evidence in this case did not constitute a violation of defendant's right to remain silent under the United States Constitution, 1972 Montana Constitution, Article II, Section 25; Griffin, or Hart.

We also note here, as we did in State v. Caryl, ____ Mont.____ , 543 P.2d 389, 32 St.Rep. 1207, 1221, where error was assigned to prosecution comments made during trial, that:

> "A measure of the lack of significance of this alleged error is found in the failure of the defendant to move for a mistrial, submit an additional cautionary instruction, request the court to admonish the county attorney in the presence of the jury, or to take any further corrective action."

In the second assignment of error, defendant contends that evidence was improperly admitted which served the sole purpose of characterizing the defendant as an evil man with a violent disposition, a split personality, and a peculiar affinity

- 6 -

for weapons. In particular, defendant objects to the testimony of the following: (1) county welfare employee Jo Strobbe who testified that on January 21, 1975, the day before the killing, defendant was in her office seeking benefits and displayed an angry demeanor which frightened the witness and caused her to leave the room in tears, yet a few moments later defendant's attitude changed to one of polite calm; (2) acquaintance Donald Finch and wife Peggy Finch, who both testified that while defendant stayed at their home during January 19-21, 1975, defendant carried loaded weapons in the house in the presence of their children and slept with his knife and pistol in his bed.

The state, on the other hand, argues that the above testimony was properly admitted to show defendant's intent and motive to commit the crimes charged; that is, the testimony of Strobbe showed his destitute financial condition and the testimony of the Finches showed the high regard he had for his pistol which he later on January 21 "hocked" for money to play poker.

Defendant relies primarily upon State v. Sanders, 158 Mont. 113, 489 P.2d 371, for the proposition that admitted evidence must be relevant as tending to prove or disprove facts in issue in the case, and that evidence of past acts or conduct tending to show only bad character are collateral, irrelevant and prejudicial.

Sanders is distinguishable. Here, unlike Sanders, the testimony was admitted on the basis of relevancy. The testimony taken as a whole tends to establish the fact that defendant, just prior to the crimes, was desperate for money. Such circumstantial evidence may provide an inference for the motive of the crimes. See State v. Murdock, 160 Mont. 95, 104, 500 P.2d 387; State v. Fine, 90 Mont. 311, 2 P.2d 1016. As we stated in Murdock:

" * * * Although motive is not an element of

- 7 -

the crime, motive or lack of motive is a cir-
cumstance tending to establish guilt or innocence
* * *."

Furthermore, the record does not indicate that any
testimony regarding defendant's character which was admitted
as part of the motive evidence was prejudicial to defendant.

The third assignment of error is that evidence of other
crimes committed by an accused is inadmissible to show commission
of the crime charged. A discussion of the general rule and its
exceptions is contained in State v. Jensen, 153 Mont. 233, 239,
455 P.2d 631. There we held that the test of the exception to
the rule of exclusion has three elements: "similarity of crimes
or acts, nearness in time, and tendency to establish a common
scheme, plan or system." Defendant contends that testimony and
exhibits concerning his arrest for shoplifting a blue coat on
January 22, 1975 bear little relation to the Jensen test of ad-
missibility.

This argument misses the point. The testimony regarding
the shoplifting offense was admitted for the legitimate purpose
of showing the destruction of evidence by the defendant. That
is, the prosecution implied that defendant destroyed the blue
coat which he was seen wearing on the evening of January 21-22
because it was bloody, and was trying to replace it on the after-
noon of January 22. The fact that the blue coat was allegedly
shoplifted was ancillary and subordinate to the fact that defend-
ant was apparently replacing his other blue coat.

The admission of the coat and the testimony surrounding
it was proper under these circumstances. As we said in State v.
Francis, 58 Mont. 659, 671, 194 P. 304:

" * * * This testimony tended to show a destruc-
tion or suppression of evidence by the defendant,
and was clearly admissible as a circumstance
tending toward defendant's guilt. From the record
it is clear that it was introduced for no other
purpose and the jury must have so understood the

- 8 -

testimony."

And we stated in State v. Cesar, 72 Mont. 252, 255, 232 P. 1109:

> "It is the general rule that, upon the trial of
> one accused of a specific offense, evidence of
> distinct and independent crimes is not admissible,
> and the reason for the rule is so apparent that it
> does not call for any discussion.  But the rule
> is equally well settled that, if evidence tends to
> prove the commission of the offense charged, it is
> not rendered inadmissible because it tends also to
> prove that the accused committed another crime.
> (State v. Hopkins, 68 Mont. 504, 219 P. 1106.)  The
> test is, not whether the offered evidence tends to
> prove an independent offense, but whether it is
> relevant as tending to prove any fact material to
> the issue in the case before the court.* * *"

See also:  State v. Hughes, 76 Mont. 421, 246 P. 959; State v. Quigg, 155 Mont. 119, 467 P.2d 692.

The fourth assignment of error is that the district court committed reversible error in instructing the jury on the elements of robbery substantially in the words of the robbery statute, section 94-5-401(1)(a), R.C.M. 1947, without defining "theft" as used in that section, in the words of the theft statute section 94-6-302(1), R.C.M. 1947.  This contention is without merit.  The record reveals no request by the defendant for a more specific instruction, or, indeed, for any "theft" instruction.

> "Failure to instruct in certain particulars
> cannot be assigned as error, where the court
> has properly covered issues, since, in the
> absence of request for instructions, there
> is no ruling to review. * * *
>
> " * * *
>
> "It was incumbent upon defendant to offer and
> request more specific instructions had such been
> desired.  His failure to do so cannot furnish him
> grounds for reversible error."  State v. Watson,
> 144 Mont. 576, 582, 584, 398 P.2d 949; see also:
> State v. Peters, 146 Mont. 188, 405 P.2d 642.

Finally, defendant seeks reversal on the ground that he was denied due process of law by allowing the testimony of 14 police officers on behalf of the state.  The gist of his argument is that the "excessive number" of police officers appearing on

- 9 -

the witness stand denied him a fair trial because the high respect which the uniform and the badge commands among conscientious citizens greatly outweighs the necessity of the testimony. Defendant simply fails to substantiate this claim by bringing to our attention any facts which would show prejudice--and in our review of the record we find no such prejudice. In any event, defense counsel never requested a limit in the number of police witnesses at any stage of the proceedings, nor objected to their testimony on such grounds; the question cannot be raised for the first time on appeal. State v. Peters, supra.

Two other specifications of error contained in defendant's original brief are so patently unmeritorious that they require no discussion herein.

Finding no error, the judgment of conviction is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices