No. 13358

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

-------------------------

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

JOHN LeROY FINLEY,

Defendant and Appellant.

-------------------------

Appeal from: District Court of the First Judicial District,
Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

For Appellant:

Small, Cummins and Hatch, Helena, Montana
Gregory A. Jackson argued, Helena, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Charles Graveley, County Attorney, argued, Helena,
Montana

-------------------------

Submitted: May 11, 1977

Decided: JUL 12 1977

Filed: JUL 12 1977

Thomas J. Kearney
_____
                      Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

Defendant John Leroy Finley appeals from a judgment of the district court, Lewis and Clark County, of conviction for driving a motor vehicle upon the highways while under the influence of intoxicating liquor.

On the night of January 18, 1976, defendant's wife left their family home after an argument with defendant. Defendant drove his automobile on the city streets of Helena, Montana, in an attempt to locate his wife. When defendant's wife discovered defendant was driving the family car, she telephoned the Helena city police and reported defendant was driving while intoxicated. The police responded to the call, stopped defendant as he was returning to his house, concluded he was indeed driving while intoxicated, and placed him under arrest for the offense of driving a motor vehicle, while under the influence of intoxicating liquor. The arresting officers, according to uncontroverted testimony at trial, then advised defendant of his Miranda rights, took him into custody, and transported him to the Helena city jail. From the time defendant entered the police station to the time he was placed in a jail cell, his words and actions were recorded on an audio-video tape recording. Defendant did not give his consent to the recording; nor did the police inform him they were audio-video taping his actions and speech.

Defendant, who had two previous driving under the influence convictions, was charged under section 32-2142(d), R.C.M. 1947, and arraigned in district court, Lewis and Clark County. Defendant, in a pretrial motion, moved to exclude the audio-video tape recording from admission into evidence at trial. The district court denied defendant's motion and at trial admitted the tape into evidence, over defendant's objections, to aid the jury in understanding the testimony of eyewitnesses. At least six

- 2 -

police officers and employees observed defendant while he was audio-video taped, and three of those witnesses testified at trial. A six person jury found defendant guilty as charged. Defendant was thereafter sentenced to one year in Montana State Prison.

Defendant appealed his conviction, contending that police use of audio-video tape recording without his consent, and admission of the tape into evidence at trial, violates these constitutionally protected rights and privileges:

1. The privilege against self-incrimination, protected by the Fifth Amendment, United States Constitution, and by Art. II, Section 25, 1972 Montana Constitution.

2. The right to not be deprived of liberty without due process of law, recognized in the Fourteenth Amendment, United States Constitution, and in Art. II, Section 17, 1972 Montana Constitution.

3. The right to be secure from unreasonable searches and seizures, guaranteed by the Fourth Amendment, United States Constitution, and Art. II, Section 11, 1972 Montana Constitution.

Defendant's primary contention is that his constitutionally protected privilege against self-incrimination was abridged when his words and actions were recorded on audio-video tape without his consent or knowledge, and then submitted to the jury as evidence at trial. Defendant claims the audio-video tape was incriminating evidence obtained from him by compulsion, and must be supressed under the rule of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L ed 2d 694.

Under the Fifth Amendment to the United States Constitution, and under the substantially identically worded Art. II, Section 25, 1972 Montana Constitution, no person may be compelled to testify against himself in a criminal proceeding. This Court

has held the Montana constitutional guarantee of the privilege against self-incrimination affords no broader protection to an accused than does the Fifth Amendment. State v. Armstrong, ____Mont.____, 552 P.2d 616, 33 St.Rep. 688. The opinions of the United States Supreme Court, therefore, delineate the maximum breadth of the privilege against self-incrimination in Montana.

The Supreme Court has distinguished between testimonial compulsion and compulsion which does not force the accused to be a witness against himself, but merely requires him to be the source of real or physical evidence. Testimonial compulsion is proscribed by the Fifth Amendment and by Art. II, Section 25, 1972 Montana Constitution. The Court in Miranda stated that, to safeguard the privilege against self-incrimination, police must, prior to interrogation of a suspect in custody, inform the accused he has the right to remain silent; that anything he says may be used as evidence against him in court; that he has the right to consult a lawyer and have the lawyer present with him during the interrogation; and, if he is indigent, he may obtain court appointed counsel. Without the Miranda warning or other equally effective measures, the person in custody would not be deemed to have intelligently waived his privilege against self-incrimination, and any evidence of a testimonial nature obtained from the accused would be inadmissible at trial. The privilege against testimonial compulsion extends to the defendant's written and oral statements as well as to communicative gestures, such as a nod of the head in response to a question. "It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take * * *." Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L ed 2d 908, 916.

Real or objective evidence taken from the accused, however, is not protected by Art. II, Section 25, or by the Fifth

- 4 -

Amendment. In Schmerber, results of a test for alcohol in blood taken from defendant despite his refusal to consent to the test, were admissible at trial and did not violate defendant's privilege against self-incrimination. The Court in Schmerber followed a long line of Supreme Court decisions when it held:

> " * * * The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony', but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it." 16 L ed 2d 916.

This Court, too, has long and consistently recognized that, while testimonial compulsion is constitutionally prohibited, the privilege against self-incrimination does not extend to real or objective evidence. State v. Fuller, 34 Mont. 12, 85 P. 369; State v. Campbell, 146 Mont. 251, 405 P.2d 978; State ex rel. Sikora v. Dist. Ct., 154 Mont. 241, 462 P.2d 897. The crucial inquiry, therefore, is whether the audio-video taping of the speech and actions of defendant in the police station constituted constitutionally prohibited testimonial compulsion or whether his words and actions recorded on the tape were merely real, physical, or objective evidence.

We hold that the audio-video taping in this case was objective evidence and, therefore, outside the scope of Art. II, Section 25 and Fifth Amendment protection. There is no evidence in the record which indicates the recording contained any speech or gesture of defendant which was testimonial in nature. The tape did not contain defendant's responses to interrogation by police. The audio-video tape was introduced into evidence not for the incriminating content of the words uttered by defendant, but as evidence helpful to the jury in understanding the testimony of the police officers and employees who observed defendant's unsteady walk and slurred speech in the police station. While

- 5 -

this Court has not specifically ruled on the admissibility of video tapes we now join other jurisdictions which have held, provided the proper foundation is laid, that both motion pictures and video tapes relevant and material to contested issues may be admitted into evidence in the sound discretion of the trial judge. See Annot., 62 ALR2d 686, 701-703 §7. This is a logical extension of this Court's holdings that sound recordings, State v. Warwick, 158 Mont. 531, 494 P.2d 627, and photographs, State v. Harney, 160 Mont. 55, 499 P.2d 802, may be admissible in evidence.

The decisions of courts in several other jurisdictions support the holding that the audio-video tape involved in this case was objective, rather than testimonial evidence, and as such, did not infringe defendant's privilege against self-incrimination. In Hendricks v. Swenson, 456 F.2d 503, 506, 507, wherein the admissibility of an audio-video tape of a defendant's murder confession was in issue, the Eighth Circuit Court of Appeals stated:

> "As to whether the use of such tape comes dangerously close to requiring the defendant to incriminate himself, we think this no more incriminates him that the taking of still pictures or blood or urine samples. Such procedure does not violate the Fifth Amendment. [Citing cases.] We conclude that a video tape incriminates the defendant only if the statement itself is incriminating. If the proper foundation has been laid, the reception in evidence of a video tape should aid the trier of fact." 456 F.2d 506.

The courts of several states have ruled on the precise question of the admissibility of motion pictures, video tapes, and audio-video tapes of defendants who have been arrested for driving motor vehicles while under the influence of intoxicating liquor. The courts in the following cases held that such tapes or motion pictures are objective, rather than testimonial evidence, and are admissible at trial without violating defendants' privilege

- 6 -

against self-incrimination. State v. Fellows, 47 Ohio App.2d 154, 352 N.E.2d 631, 635 (video tape); City of Piqua v. Hinger, 15 Ohio St.2d 110, 238 N.E.2d 766, cert. den., 393 U.S. 1001, 89 S.Ct. 484, 21 L ed 2d 466 (motion pictures); Thompson v. People, 181 Col. 194, 510 P.2d 311, (video tape); Lanford v. People, 159 Col. 36, 409 P.2d 829, (sound motion pictures); People v. Fenelon, 14 Ill.App.3d 622, 303 N.E.2d 38, (video tape); State v. Strickland, 276 N.C. 253, 173 S.E.2d 129, (sound motion pictures); Carpenter v. State, 169 Tex. Crim. App. 283, 333 S.W.2d 391, (motion pictures); Housewright v. State, 154 Tex. Crim. App. 101, 225 S.W.2d 417 (motion pictures).

Only one state has ruled that motion pictures of a defendant who was arrested on a driving while under the influence of intoxicating liquor charge constituted testimonial evidence. The Oklahoma Court of Criminal Appeals in Spencer v. State, Okla. Crim. App. 1965,/ruled that Oklahoma's constitutional privilege
404 P.2d 46,
against self-incrimination provision was broad enough to prohibit use, as evidence, of motion pictures taken of the defendant without his knowledge. The court relied on Spencer as authority for its holdings in two subsequent cases. Ritchie v. State, Okla. Crim. App. 1966, 415 P.2d 176; Stewart v. State, Okla. Crim. App. 1967, 435 P.2d 191. Other jurisdictions, however, have expressly declined to follow the reasoning of the Oklahoma court in Spencer. State v. Strickland, 276 N.C. 253, 173 S.E.2d 129; State v. Faidley, 202 Kan. 517, 450 P.2d 20. In a recent opinion, the Oklahoma Court of Criminal Appeals expressly overruled Spencer. Ross v. State, Okla. Crim. App. 1976, 556 P.2d 638, 640, citing State v. Thomason, Okla. Crim. App. 1975, 538 P.2d 1080.

Because we hold the audio-video tape of defendant in the police station was objective evidence, unprotected by defendant's constitutional privilege against self-incrimination, the holding

- 7 -

in *Miranda* is inapplicable to the facts of this case. We need not in this case, therefore, discuss whether the *Miranda* warning given by the police to defendant at the time of his arrest would have sufficed to sustain defendant's incriminating testimonial statements made at the police station and recorded without his knowledge.

Defendant raised two other constitutional issues which he apparently abandoned, since he failed to discuss them in his brief. We shall, however, deal with those issues in this opinion to provide guidance in future appeals. Defendant stated the introduction of the audio-video tape into evidence violated the due process and search and seizure clauses of the Montana and United States Constitutions. The protections of Art. II, Section 17 and Art. II, Section 11, 1972 Montana Constitution, are identical to those of the Fourteenth Amendment due process clause and the Fourth Amendment protection against unreasonable searches and seizures, respectively. For the reasons stated hereafter, defendant's due process and search and seizure claims are without merit.

This Court has noted that even where evidence obtained from a defendant is "real" or "objective" evidence, and thus outside the coverage of the Fifth Amendment, "the manner in which such evidence is obtained must be consistent with the requirements of due process." State v. Campbell, 146 Mont. 251, 259, 405 P.2d 978, 983. Here, the procedure of audio-video taping defendant was not "brutal" or "offensive" conduct similar to the forcible opening of a defendant's mouth and the forcible pumping of his stomach which "shocked the conscience" and violated the defendant's due process rights in Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183. The audio-video taping of defendant was a lesser personal invasion than the forced blood tests upheld by the Court in *Schmerber* and in Breithaupt v. Abram, 352 U.S.

- 8 -

432, 77 S.Ct. 408, 1 L ed 2d 448, 452-53, where the Court stated:

> " * * * Modern community living requires modern
> scientific methods of crime detection lest the
> public go unprotected * * *
>
> "As against the right of an individual that his
> person be held inviolable * * * must be set the
> interests of society in the scientific determination
> of intoxication * * *. And the more so since the
> test likewise may establish innocence, thus afford-
> ing protection against the treachery of judgment
> based on one or more of the senses."

Neither does defendant's Fourth Amendment right to be secure from unreasonable searches and seizures protect him from having his words and actions audio-video taped in a police station, after he had been arrested.

Although the Fourth Amendment may protect what an individual seeks to preserve as private, even when he is in a public place, a person " * * * knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L ed 2d 576, 582. Defendant in the instant case did not justifiably rely on his privacy as did the defendant in Katz, whose conversations were recorded when he placed phone calls in a glass-enclosed telephone booth. Here defendant was in a police station where he knew police officers and employees were observing his words and actions.

The United States Supreme Court has consistently upheld the use in evidence of recorded conversations between defendants and the police informants whom they mistakenly believed to be compatriots. In such cases, defendants' misplaced confidences in police informants are not protected by the Fourth Amendment. United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L ed 2d 453; Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L ed 2d 374; Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L ed 2d 462. In the instant case, defendant did not talk and

- 9 -

walk in the presence of police informants, but in the presence of police officers, while in the police station. Defendant had no legitimate expectation of privacy to be protected by Art. II, Section 11, 1972 Montana Constitution or by the Fourth Amendment.

The judgment of the district court is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

Justices