MR. JUSTICE SHEA,
dissenting:
I join in Justice Sheehy’s dissent and add my own dissent to the decision of the majority to undo what we declared *352 the law to be in State v. Jackson (1981), 195 Mont. 185, 637 P.2d 1. (In this dissent, I refer to our 1981 Jackson decision as Jackson I and to the present decision as Jackson II.) I dissent not because I believe opinions I have authored are cast in granite, but because the majority here has ignored the full import of our decision in Jackson J, the import of which they fully recognized in .their dissent. We held that not only were the defendant’s constitutional rights violated under the Fifth Amendment to the United States Constitution, but also and as an independent ground, [that defendant’s rights were violated under the self-incrimination of Art. II, § 25 of our own state constitution.] In the guise of compliance with the mandate of the United States Supreme Court’s order of remand vacating our judgment, the majority has simply rewritten Jackson to comport with its own views as to interpreting our state constitution. In doing so, the majority has delegated to the United States Supreme Court our duty to interpret our constitution. This constitutes an abdication of our duty to interpret our own constitution.
Before launching into the body of my dissent, I detour here to comment on the current trends to crack down on drunk driving. Those trends are laudable and every effort to do so is a step in the right direction — provided that no constitutional rights are violated in the process. In South Dakota v. Neville (1983), _U.S._, 103 S.Ct. 916, 74 L.Ed.2d 748, the United States Supreme Court referred to the carnage of our highways as a result of drunk driving. No one can deny the tragic statistics relating to drinking and driving. However, the criminal law does not have to be enforced in such a manner as to cause a head-on confrontation with either the Fifth Amendment or Art. II, § 25 of our own constitution. Driving is a privilege, and that privilege can be revoked. I see nothing unconstitutional in a law providing that if a driver (on reasonable probable cause) is asked by a law officer to give a blood alcohol sample or a breath sample and refuses to do so, his license can be sus *353 pended. The refusal can be the triggering event for suspension. However, if the State chose, it could still proceed against the defendant on a charge of driving while intoxicated. In the criminal proceeding, however, the State should not be able to use the defendant’s refusal against him as a tacit admission that his refusal was based on his belief that he could not pass the test. That, in my judgment, violates at least Art. II, § 25 of our own constitution, and that is what I thought we held in Jackson I.
As the author of Jackson I, I clearly made a mistake, for I did not recognize the extent to which the United States Supreme Court stood ready to intrude on the judicial affairs of this state in interpreting our own constitution. However, the remand order failed to analyze our decision, for to have done so would have been to recognize that we did indeed rely on Art. II, § 25, as an independent ground of decision. Instead, the Supreme Court remanded the case to this Court to determine whether our decision “was based upon federal or state constitutional grounds, or both, . . .” (Emphasis added.) A reading of our decision should have told an objective United States Supreme Court that our decision was based on both and that a decision based on our own constitution was sufficient for that Court to deny certiorari.
In his dissent from the majority’s remand order, however, Justice Stevens did take the time to analyze this Court’s decision in Jackson I, and he was eminently satisfied that we clearly based our decision on an independent state ground by relying on Art. II, § 25 of our own constitution. I quote Justice Steven’s dissent in full so that the reader can make his or her own determination of whether this Court reached its decision on an independent state ground.
“Justice Stevens, dissenting.
“In its opinion explaining its holding that the defendant’s refusal to submit to a breathalyzer sobriety test is inadmissible, the majority of the Supreme Court of Montana stated, in part:
“ ‘We hold that such refusal is testimonial in nature and *354 that to admit evidence of the fact of refusal would violate the defendant’s Fifth Amendment privilege as guaranteed by the United States Constitution, and would further violate defendant’s privilege as guaranteed by Art. II, § 25 of the Montana Constitution.’ App. to Pet. for Cert. A-2.
“After analyzing the federal constitutional question in the light of this Court’s opinion in Schmerber v. California, 384 U.S. 757 [86 S.Ct. 1826, 16 L.Ed.2d 908], the court continued:
“ ‘The issue is also controlled by Art. II, § 25 of our own constitution, which provides that “no person shall be compelled to testify against himself in a criminal proceeding.” The issue involves a communication that is testimonial in nature, and we must resolve the issue by applying Art. II, § 25. Clearly, to permit evidence of defendant’s refusal to take the breathalyzer test would violate not only the United States Constitution, but also our own constitution.’
“ ‘In State v. Finley (1977), 173 Mont. 162, 566 P.2d 1119, we held that a defendant’s privilege against self-incrimination was not violated by admitting into evidence a videotape recording of his post-arrest words and actions. We decided that the tape had not been introduced for the incriminating content of the words uttered by the defendant, but rather for the purpose of aiding the jury in understanding the testimony of the witnesses who had observed the defendant’s unsteady walk and his slurred speech after his arrest. We specifically noted that the videotape did not contain incriminating responses to interrogation by the police. But the same situation does not exist here. It is obvious that defendant’s refusal is inherently self-incriminating because it carries a strong inference of guilt — the prosecutor would surely argue that defendant’s refusal to take the test was prompted only by his knowledge that the test results would reveal his intoxication, and therefore incriminate him.’
“ ‘We hold under our own constitution, that if a communication of refusal, whether written, verbal, or otherwise, in *355 volves the defendant’s consciousness of the facts and the operation of his mind in expressing it, the communication is testimonial in nature. A defendant’s silence or negative reply to an officer’s request which calls for an immediate reply is clearly an overt communication of the defendant’s thoughts in response to the request. Doyle v. Ohio (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91. It is the act of refusal that is pertinent and suggestive of guilt, rather than the way in which it is communicated. Under our constitution, the privilege against self-incrimination forbids any compulsory communication of an accused person’s thoughts, whether by acts or words spoken, and the fact that it does not extend its protection to forbid the compulsory exhibition of physical characteristics does not nullify the protection it does provide.’ App. to Pet. for Cert. A-8A-10.
“Consistent with the views I expressed in dissent in South Dakota v. Neville, [_] U.S. [_, _ 103 S.Ct. 916, 924, 74 L.Ed.2d 748] (1983), I believe the statements I have quoted are sufficient to demonstrate that the judgment of the Montana Supreme Court rests on an adequate and independent state ground and that this Court is therefore without jurisdiction to vacate its judgment. I therefore respectfully dissent.”
In unfortunate statements in two previous cases this Court declared that the Montana constitutional provision against self-incrimination would march lock-step with interpretation given to the Fifth Amendment clause of the United States Constitution. State v. Finley (1977), 173 Mont. 162, 566 P.2d 1119; State v. Armstrong (1976), 170 Mont. 256, 552 P.2d 616. Although the majority in Jackson II now again rely on these statements, they recognized full well in dissenting to Jackson I that the intent of the majority was to give greater protection in Montana than what the federal constitution provided. The dissent states in part:
“. . . It [the majority holding] extends the breadth of Montana’s constitutional provision beyond that afforded by *356 the United States Constitution and overrules sub silento this Court’s own interpretation of Montana’s own interpretation of Montana’s privilege against self-incrimination [obviously referring to the statements in Armstrong and Finley that Montana’s constitutional provision against self-incrimination had only the meaning that the United States Supreme Court chose to give to it.]” 195 Mont. at 196, 637 P.2d at 7.
There, the dissenters recognized that Armstrong and Finley had been overruled to the extent that we would let the United States Supreme Court interpret Art. II, § 25 of our own constitution for us. But the present majority in Jackson II, now sings a different tune. They conclude, without alluding to their own admissions in Jackson I, our constitutional provision against self-incrimination must derive its sole meaning from decisions of the United States Supreme Court interpreting the Fifth Amendment.
Before I became a member of this Court and since I have been a member of this Court, I have been constantly bothered by the inconsistency of this Court in its decisions, but particularly so in the administration of the criminal law where even more consistency is required because of the underlying life and liberty considerations involved with each case. The majority opinion here demonstrates once again this inconsistency and our unstated policy to treat each criminal appeal on an ad hoc basis. This unstated policy undermines the integrity of the appellate process and as a matter of judicial policy is just plain dangerous.
This result could not have been reached — in this case — if the United States Supreme Court had not arrogated to itself the powers that should, in our federal system, belong only to the states. I once again state that I agree with the concerns of Justice Sheehy in his dissent, for his concerns are real.
The danger of this intrusionary policy is fully exemplified by the arrogance of a concurring opinion in Florida v. Casal _U.S_, 103 S.Ct. 3100, 77 L.Ed.2d 277 (1983). *357 There the United States Supreme Court let stand a decision of the Florida Supreme Court that appeared to have relied on a state constitutional provision and state statute in reaching its decision. But the Chief Justice of the United States Supreme Court did not agree with the decision of the Florida Supreme Court and suggested that the United States Supreme Court was the sole repository of judicial wisdom and rationality.
In the final paragraph of this concurring opinion, the Chief Justice expressed an attitude that fully reflects the judicial power that he would arrogate for the United States Supreme Court:
“With our dual system of state and federal laws, administered by parallel state and federal courts, different standards may arise in different areas. But when state courts interpret state law to require more than the Federal Constitution requires, the citizens of the state must be aware that they have the power to amend state law to ensure rational law enforcement. The people of Florida have now done so with respect to Art. 1, § 12 of the State Constitution; they have it within their power to do so with respect to Florida Statute § 327.56 [the statute involved that was interpreted by the Florida Supreme Court contrary to what the Chief Justice believed its interpretation should be.].” Florida v. Casal, supra, at _, 103 S.Ct. at 3101-02 (Burger, J., concurring) (Emphasis added.)
This philosophy appears to have permeated a majority of the members of that Court and I suggest that this philosophy is what led to the remand in this case. The Chief Justice would have state governments amend state constitutions and statutes to march lock-step with the judicial pronouncements of the United States Supreme Court. It appears that this philosophy is contagious. The majority here has declared that Art. II, §25, of our own constitution has only the meaning that the United States Supreme Court chooses to give it.
I suggest that the provisions of our own constitution do *358 have meaning independent of the interpretations given to the United States Constitution, and that so long as we do not deny rights guaranteed by the United States Constitution, we can and should, where the situation arises, interpret our own constitution to give more rights than those granted by the United States Constitution. But the majority has abdicated that responsibility by holding that provisions of our constitution “substantially identical” (whatever that means) with provisions of the United States Constitution can get their meaning only from the United States Supreme Court. It seems the majority has adopted the philosophy suggested by Chief Justice Burger in Florida v. Casal, and would permit the United States Supreme Court to tell us what our state constitution means.
Based on these considerations, I would reaffirm our opinion in Jackson I, an opinion that not only attempted to interpret the United States Constitution, but also relied on a state ground in affirming the trial court’s order.