THE STATE OF MONTANA, Plaintiff and Respondent, v.
CHARLES CLIFFORD ANDERSON, Defendant and Appellant.

No. 11700.
Submitted Sept. 18, 1970.
Decided Nov. 18, 1970.
476 P.2d 780.

Stanley M. Doyle, argued, Polson, for appellant.

Robert L. Woodahl, Atty. Gen., Robert Gannon, Asst. Atty. Gen., argued, Helena, Harold J. Pinsoneault, County Atty., Daniel Shea, Deputy County Atty., argued, Missoula, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal by Charles Clifford Anderson (hereafter referred to as appellant) from a judgment convicting him of statutory rape entered in the district court of Missoula County.

From the record it appears that on July 8, 1968, appellant drove from his home in Kalispell to Missoula for a prearranged medical examination. Upon arriving in Missoula, appellant telephoned a Mrs. Williamson and a fourteen year old girl named Kathy, who was baby-sitting at the Williamson home, answered the call. Kathy informed appellant that Mrs. Williamson was at work at St. Patrick's Hospital. Appellant then drove to the Williamson home and asked Kathy to telephone Mrs. Williamson at the hospital. After this call, appellant left the Williamson home and began drinking beer at several bars in the area.

Later the same evening, between 10 and 10:30 p.m., appellant returned to the Williamson home and again asked Kathy to telephone Mrs. Williamson. After this call, appellant asked Kathy to telephone a friend of Mrs. Williamson. Kathy placed the call, but gained no response.

The remaining facts are disputed to the extent that appellant claims he left the Williamson home immediately after Kathy's futile attempt to call Mrs. Williamson's friend, and he made no attempt to assault or rape Kathy. Contrary to appellant's version, Kathy testified that upon hanging up the telephone, appellant grabbed her by the arm, pulled her into the living room, and pushed her on to the couch. Kathy testified she tried to run out the front door, but appellant said he would kill her if she resisted. Appellant allegedly pulled Kathy from the couch

in the living room and dragged her into a bedroom where he forcibly raped her on a bed. Kathy testified she was not married to appellant.

Kathy flew from the Williamson home after the alleged rape and ran to a neighbor's home from which she called her parents who lived about four miles from the Williamson home to report the incident. Her parents picked Kathy up at the neighbor's home shortly after the telephone call and returned to the Williamson home. Upon finding the Williamson children safe and asleep, they telephoned the Missoula police.

Kathy was immediately taken to St. Patrick's Hospital for a vaginal examination. Dr. Melvin J. Johnson and Dr. Bernard J. McLaverty, the examining physicians, testified that many live sperm were present in her vaginal tract. Dr. Johnson testified that accordng to his medical analysis an act of sexual intercourse had been accomplished upon her within twenty-four hours prior to examination.

Appellant advances error in the district court on four issues.

First: Although no record was made, appellant alleges his case was prejudiced by statements of the prosecuting attorney made to the jury on voir dire to the effect that a rape case has only two witnesses, the people involved, and a jury must weigh their respective testimony if defendant chooses to testify. Appellant contends this comment to the jury compelled him to forego his right to remain silent under the Fifth Amendment to the United States Constitution; Article III, Section 18 of the Montana Constitution; and section 94-8803, R.C.M.1947, which reads in pertinent part:

"A defendant in a criminal action or proceeding cannot be compelled to be a witness against himself * * * . If the defendant does not claim the right to be sworn, or does not testify, it must not be used to his prejudice, and the attorney prosecuting must not comment to the court or jury on the same."

Second: That while the trial record from the district court contains references to Missoula and buildings and streets found in Missoula, there is no direct evidence establishing that this

crime was committed in Missoula County, where the case was tried. Because of this appellant urges the prosecution failed to establish the necessary venue.

Third: Immediately after the prosecution rested its case in chief, appellant moved to dismiss on grounds that the prosecution had failed to prove a prima-facie case, because of a failure to show that Kathy had engaged in "sexual intercourse". The motion was denied.

Fourth: Appellant questions the sufficiency of the prosecution's evidence as a whole to warrant beyond a reasonable doubt a conviction of statutory rape.

The first issue turns on appellant's right to remain silent during his trial. Section 94-8803, R.C.M.1947, has been interpreted in State v. Hart, 154 Mont. 310, 316, 462 P.2d 885, as banning the prosecution's comment regarding a defendant's failure to testify in two instances:

1. It must not be used to his prejudice, and

2. He must not comment to the court or jury on the same.

The rule that a defendant's refusal to testify may not be commented upon under the Fifth Amendment to the United States Constitution follows this guide in Hayes v. United States, 9 Cir., 368 F.2d 814, 816, and in Knowles v.United States, 10 Cir., 224 F.2d 168, 170:

"The test is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify."

Montana's Constitution, Article III, Section 18, affords a defendant no greater protection than the federal guaranty.

These tests make the result on the first issue of this case clear. Prosecution's exact words are not in the record, but their agreed substance was that a rape case normally has only two direct witnesses, the people involved, and a jury must weigh their respective testimony if defendant chooses to testify. It was not a comment on appellant's failure to testify because the trial proceedings had not reached a stage evincing appellant's choice of

whether or not he would testify. Such a comment does not even suggest an inference prejudicial to appellant, thereby compelling him to take the stand because the words are merely descriptive of upcoming trial proceedings to become obvious to a jury as the trial progresses. For these reasons, we hold the alleged comments by the prosecution to be outside the ban of the Fifth Amendment to the United States Constitution, the Montana Constitution, and section 94-8803, R.C.M.1947.

As to the second issue, failure to prove venue, in State v. Williams, 122 Mont. 279, 282, 202 P.2d 245, 246, this Court said:

"Accordingly the courts of this state will take judicial notice of the boundaries of the various counties as established, fixed and defined by the Codes and of the territorial limits of such political subdivisions of the state as such limits are shown and depicted on the official map of the state of Montana."

This rule was reaffirmed in State v. Peters, 146 Mont. 188, 405 P.2d 642.

In the *Williams* case, the city of Kalispell was described as the scene of a crime, therefore this Court found a lower court could take judicial notice of Kalispell being located within Flathead County, thereby establishing the necessary venue in Flathead County. Similarly, in the present case, Missoula is fixed as the scene of the crime by reference in the record to Missoula itself, building and streets found in Missoula, and the investigating officers from the Missoula police department. Therefore, it was proper for the district court to take judicial notice of Missoula as being located within the county of Missoula, thereby establishing the necessary venue.

As to the third issue, prima-facie evidence is defined by section 93-301-11, R.C.M.1947, as:

"* * * that which suffices for the proof of a particular fact, until contradicted and overcome by other evidence."

Facts necessary to establish a prima-facie case of statutory rape were set out in State v. Reid, 127 Mont. 552, 562, 267 P.2d 986, as follows:

"Under the law as declared by R.C.M.1947, § 94-4101, subd. 1, any man who accomplishes an act of sexual intercourse with a female under the age of 18 years, when such female is not his wife, is guilty of the crime of statutory rape. The *corpus delicti* is sufficiently proved by the testimony of the prosecutrix that she had sexual intercourse with the accused at the time and place set forth in the information."

Kathy testified she was fourteen years old at the time of the incident, and had never been married to appellant. On direct examination, Kathy referred to the culmination of appellant's assault: "Then he raped me. He pulled down my pants and then he raped me." On cross-examination, Kathy was asked this question: "Kathy, you testified and said that this man committed an act of sexual intercourse upon you" Kathy answered: "Yes." The prosecution further explored Kathy's understanding of the alleged event on redirect this way:

"Q. Prior to the time that you were raped on July 8 of 1968, had you ever had sexual intercourse with any individual? A. No.

"Q. Were you a virgin at the time? A. Yes."

It was not reasonable to contend that Kathy did not understand the meaning of "sexual intercourse" in light of her testimony, and her statements sufficiently demonstrated to the court and jury that an illegal act of "sexual intercourse" was being alleged. Therefore, the prosecution did establish a prima-facie case of statutory rape against appellant in the case in chief according to the precepts of State v. Reid, supra, and section 93-301-11, R.C.M.1947.

Finally, section 93-301-4, R.C.M.1947, demands this degree of proof required to establish any fact:

"The law does not require demonstration; that is, such a degree of proof as, excluding possibility of error, produces absolute certainty, because such proof is rarely possible. Moral certainty is only required, or that degree of proof which produces conviction in an unprejudiced mind."

Kathy's testimony alleging rape was corroborated by the medical evidence of many live sperm in her vaginal tract, and Dr. Melvin J. Johnson's testimony based on medical analysis reporting an act of sexual intercourse upon her within twenty-four hours prior to the examination. This evidence coupled with the uncontroverted facts permits a finding of sufficient evidence to support a jury's conviction of appellant with moral certainty in an unprejudiced mind. The fourth issue is without merit.

The judgment is affirmed.

MR. JUSTICES HASWELL, JOHN C. HARRISON, DALY and CASTLES concur.