No. 14820

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

CHARLES W. DOLAN,

Defendant and Appellant.

Appeal from:  District Court of the Eighth Judicial District,
In and for the County of Cascade.
Honorable Joel G. Roth, Judge presiding.

Counsel of Record:

For Appellant:

Robert Emmons argued, Great Falls, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Sarah Power, Legal Intern, Attorney General's Office,
 argued, Helena, Montana
J. Fred Bourdeau, County Attorney, Great Falls, Montana
Mark Barer argued, Deputy County Attorney, Great Falls,
 Montana

Submitted:  September 9, 1980

Decided: NOV

Filed:

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Defendant Charles W. Dolan appeals from the judgment of the Eighth Judicial District Court, Cascade County. The defendant was accused by information of robbery and theft. Following a jury trial, the defendant was found guilty of theft but not guilty of robbery. The District Court entered its sentence and judgment and denied defendant's post-trial motions.

In this appeal, defendant claims that a number of errors were committed during his trial:

1. The evidence presented by the prosecution at trial was insufficient to prove a charge of theft.

2. The District Court erred in allowing the jury to consider the testimony of John Grissom, an accomplice in the theft.

3. The District Court erred in its instructions given to the jury.

4. The prosecution's closing remarks to the jury contained impermissible comments on the defendant's decision to present no evidence to rebut the prosecution's case.

We find no merit in defendant's argument that reversible error was committed at trial. We affirm the judgment of the District Court.

At approximately 1:00 a.m. on September 22, 1978, a "holdup" occurred at the Crossroads Truck Stop in Great Falls, Montana. A man brandishing a handgun, entered the truck stop and demanded that the cashier give him the truck-stop's money. The cashier described the gunman as wearing black tennis shoes, blue denim jeans, a green jacket, gloves, a red helmet and a white cloth over his face. The truck stop cashier gave the gunman approximately $5,000 in United States and Canadian currency from

the cash register and the truck stop operator's office. The gunman took the money and fled.

The cashier reported the holdup to the Great Falls police. Detective David Warrington, assigned to investigate the holdup, apprehended John Grissom, a suspect in the holdup. Grissom admitted his involvement in the holdup to Detective Warrington, stating that he had driven the "getaway car" for the defendant. Following his confession to Warrington, Grissom agreed to testify against defendant in exchange for immunity.

The prosecution presented six witnesses to prove its charges against defendant including the truck stop cashier, the truck stop operator, two Great Falls detectives including Warrington, William Steele, a friend of the defendant, and John Grissom. Grissom's testimony, however, provided the key evidence linking defendant to the truck stop holdup. Grissom testified defendant "held-up" the truck stop wearing the same garb as described by the cashier, that defendant showed him the money taken from the truck stop, and that the defendant described to him in detail the holdup sequence of events.

Key corroborating evidence of Grissom's theft account was given by the testimony of William Steele. At the time of the holdup, Steele was a bartender at a local bar. Steele testified that he visited with defendant a few days after the holdup while at work in the bar, and that defendant ordered several rounds of drinks at the bar and paid for each round with Canadian money. When Steele asked defendant where he got the Canadian money, Steele testified defendant first replied that the money was left over from a trip to Canada. Later that evening, however, defendant admitted to Steele that the Canadian money was part of the truck stop holdup money.

During the trial, Steele could not remember whether defendant said, "I got the money from the Crossroads" or "I robbed

the Crossroads". Detective Warrington testified that his police report of an interview with Steele made following the holdup indicated Steele told the detective that the defendant said, "I held-up the Crossroads."

Defendant presented no evidence following the presentation of the prosecution's case. Counsel for defendant made a motion to the court for a directed verdict, claiming insufficient evidence was presented to prove the prosecution's case. Defense counsel argued that legally insufficient corroborating evidence was offered to substantiate Grissom's testimony. The District Court acknowledged the corroborating evidence presented was not strong, but the court held the corroborating evidence was legally sufficient to support Grissom's testimony. The District Court denied the motion and allowed the case to be submitted to the jury following its instructions on the law of the case. The jury found defendant guilty of theft and not guilty of robbery.

Issue No. 1:  Sufficiency of the Evidence

Count II of the information charges ". . . defendant did purposely or knowingly obtain or exert unauthorized control over property, cash in U.S. and Canadian currency, of a value of more than $150.00, owned by Crossroads Truck Stop, with the purpose of depriving the owner of the property." Count I, the robbery count, charged defendant committed this theft while placing the truck stop cashier in fear of immediate bodily injury. In order to prove the robbery charge, the prosecution offered the cashier's testimony of fear of injury. While testifying, the cashier further provided important testimony regarding the amount of money taken by the gunman during the holdup.

Defense counsel argues that the jury must have distrusted the cashier's testimony because the jury found defendant not guilty of robbery. Defense counsel asserts that

the cashier's testimony is critical to prove that a theft was committed. If the jury disbelieved the cashier, the defendant claims the evidence then is insufficient to prove the theft as charged.

We reject this argument. The defendant erroneously argues that all of the cashier's testimony must be disregarded. The court instructed the jury specifically about its right to believe or disbelieve any portion of a witness' testimony. In State v. DeGeorge (1977), 173 Mont. 35, 566 P.2d 59, we held that "[t]his Court has frequently observed that disputed questions of fact and the credibility of witnesses will not be considered on appeal but that determination of such matters is within the province of the jury. As long as there is substantial evidence to support the verdict, it will not be disturbed on appeal. (Citations omitted.)" A review of the record indicates sufficient evidence supports the jury verdict in this case.

The defendant argues further that the evidence does not show the Crossroads Truck Stop legally owned the stolen money. This argument fails. The prosecution proved through the cashier's and operator's testimony that the truck stop possessed the money stolen. Proof of possession suffices here to prove ownership. See, section 45-2-101(40), MCA. In this case, the defendant proposed and the court accepted a jury instruction providing that "owner" should be defined by the jury in terms of possession of property.

Issue No. 2: Testimony of John Grissom

Defendant asserts three errors were made by the District Court with regard to the prosecution's use of John Grissom as a witness against defendant.

The first alleged error concerns the court's refusal of defendant's motion for discovery of Grissom's "rap sheet". This information, defendant contends, could validly be used to damage

-5-

Grissom's credibility. In support of this motion, counsel for defendant cited the opinion of the United States Supreme Court in Davis v. Alaska (1974), 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347. The court considered Davis, but rejected defendant's motion. On appeal, defendant cites Davis and contends the court denied defendant due process.

We disagree. In Davis, the Supreme Court assured a criminal defendant of his right under the Confrontation Clause of the Sixth Amendment to explore through cross-examination the partiality and motivation of a prosecution witness. The Court held that cross-examination should be permitted ". . . to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." A comparison of the facts of the Davis case with the facts presented in this case, indicates defendant's reliance on Davis in this case is misplaced.

The Davis court prohibited defense counsel from exposing to the jury the witness' criminal record. The Davis defendant therefore was unable to make a record from which to argue at trial the witness' bias or lack of impartiality expected of a witness. Defense counsel in this case was permitted to fully present evidence of Grissom's criminal character and bias. The jury here was aware of the immunity bargain made between the prosecution and Grissom, and of Grissom's complicity in the truck stop theft. The court's denial of defendant's motion was well within its discretion to control cross-examination.

The second and third alleged errors presented by defendant are direct attacks on the admissibility of Grissom's testimony. Defendant contends insufficient evidence was presented to substantiate Grissom's testimony. Defendant further contends the evidence used to corroborate this testimony is

-6-

inadmissible hearsay evidence.

Section 46-16-213, MCA, provides the test for sufficient corroborating evidence of accomplice testimony:

"A conviction cannot be had on the testimony of one responsible or legally accountable for the same offense, as defined in 45-2-301, unless the testimony is corroborated by other evidence which in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

In State v. Kemp (1979), ____ Mont. _____, 597 P.2d 96, 36 St.Rep. 1215, we summarized Montana case law of corroboration of accomplice testimony as follows:

"The sufficiency of evidence necessary to corroborate accomplice testimony is a question of law. (Citations omitted.) In defining the quantum and character of proof required to corroborate accomplice testimony, a substantial body of case law has evolved.

"To be sufficient, corroborating evidence must show more than that a crime was in fact committed or the circumstances of its commission. (Citation omitted.) It must raise more than a suspicion of the defendant's involvement in, or opportunity to commit, the crime charged. (Citation omitted.) But corroborative evidence need not be sufficient, by itself, to support a defendant's conviction or even to make out a prima facie case against him. (Citations omitted.). . .

". . . each case must be examined on its particular facts to determine if the evidence tends, in and of itself, to prove defendant's connection with the crime charged."

The key evidence corroborating Grissom's testimony was included in the testimonies of Steele and Warrington. The evidence indicates defendant admitted to Steele that the defendant "robbed" or "held-up" the truck stop, and that Steele reported to Warrington defendant's admitted involvement in the holdup. This evidence is sufficient corroborating evidence for the admissions of Grissom's testimony.

We disagree with defendant's contention that this evidence is inadmissible hearsay. This evidence is not hearsay.

Rule 801(d)(1)(A), Mont.R.Evid., provides: "(d) Statements which are not hearsay. A statement is not hearsay if "-- (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony . . ." Rule 801(d)(2)(A) Mont.R.Evid. provides: "(d) Statements which are not hearsay. A statement is not hearsay if: . . . (2) Admission by a party-opponent. The statement is offered against a party and is (A) his own statement . . ." The statement made by defendant to Steele is an admission by a party opponent to the action. The statement made by Steele to Warrington is a prior statement of the witness Steele.

Issue No. 3:  Jury Instructions

Defendant contends the court committed reversible error by rejecting defendant's proposed jury instructions regarding accomplice testimony and oral admissions, and further erred by giving the "Sandstrom" jury instruction.

Grissom's testimony was accomplice testimony. Steele's testimony included the admission by the defendant of his participation in the holdup. Defendant proposed a number of jury instructions regarding the weight the jury should assign to testimony. Each of the instructions was rejected by the court. We agree with defendant that cautionary instructions regarding accomplice testimony and oral admissions should have been included in the court's jury instructions. We disagree with defendant's contention that the court's failure to give these instructions amounts to reversible error.

> Section 26-1-303(4), MCA, provides the following:
>
> "The jury is to be instructed by the court on all proper occasions:
>
> ". . .
>
> "(4) that the testimony of an accomplice ought to be viewed with distrust, and the evidence of the oral admissions of a party with caution."

-8-

The cautionary instructions proffered by defendant were elaborate and misleading. These instructions did not employ the simple statutory language of section 26-1-303(4), MCA. The proposed accomplice testimony instructions placed unneeded emphasis on the unreliability and involuntary nature of Grissom's testimony. The proposed oral admissions instruction erroneously included "custodial interrogation" language.

The error created by the court's omission in its instructions regarding this evidence was minimized by other instructions. These instructions were directed to the testimony of prosecution witnesses because the defendant did not present any witnesses. These instructions provided:

> "You are instructed that you may also consider any demonstrated bias, prejudice or hostility of a witness toward the defendant in determining the weight to be accorded to his testimony.

> "In weighing the testimony of any witness, you should take into account his interest or want of interest in the result of this case . . .

> "Every witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testified, by the character of his testimony, or by evidence affecting his reputation for truth, honesty, integrity or his motives . . ."

Defendant claims the court committed reversible error by giving the "Sandstrom" instruction to the jury. Instruction No. 17 provided: "You are instructed that the law presumes that a person intends the ordinary consequences of his voluntary acts."

This jury instruction is identical to the instruction held to be unconstitutional in Sandstrom v. Montana (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39. In a number of recent cases we have considered the effect of the Sandstrom decision. See, State v. Hamilton (1980), ____Mont.____, 605 P.2d 1121, 37 St.Rep. 70; State v. McKenzie (1980), ____Mont.____, 608 P.2d 428, 37 St.Rep. 325; State v. Wogamon (1980), ____Mont.____, 610 P.2d 1161, 37 St.Rep. 840; and State v. Martinez (1980), ____Mont.____, ____P.2d____, 37 St.Rep. 982.

In Hamilton, we held the Sandstrom-type instructions to be harmless error since the evidence of intent in that case was overwhelming given the facts presented in the case. In this case, the Sandstrom instruction constitutes harmless error. The evidence of intent is overwhelming. The essential issue in this case is the identity of the masked gunman, not the gunman's intent. Indeed, the defendant proposed, and the court accepted a specific jury instruction regarding identity:

> "You are instructed that the evidence in this case raises the question of whether the defendant was in fact the criminal actor, and necessitates your resolving any conflict or uncertainty in testimony on that issue.

> "The burden of proof is on the prosecution with reference to every element of the crimes charged, and this burden includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crimes charged."

## Issue No. 4  Impermissible Remarks in the Prosecution's Closing Argument

The defendant claims a portion of the prosecution's closing argument to the jury denied defendant a fair trial. Defendant attacks the remarks in closing argument as an impermissible comment on the fact that defense presented no evidence following the close of the prosecution case-in-chief.

The alleged prejudicial remarks are as follows:

> "(By Mr. Vermillion:) Now, where does Mr. Dolan say he got the Canadian money--well, first, he tells young Bill Steele that he went on a trip to Canada, now, there has been no evidence brought before you to show that Charles Dolan was ever in Canada, or that he had made a trip up there, and if he had actually been up in Canada, where was the proof? Canada is not a totally barren land, with nobody up there, and if he had made a trip up to Canada to bring back sums of Canadian money, why surely there would have been somebody, and certainly he would have been up there somewhere, you know, where somebody would have seen him . . .

> "(after a review of prosecution witness testimony, Vermillion continues) Now, ladies and gentlemen, we had in this case no witnesses called by the defense, to contradict that evidence. Surely there must be someone, some acquaintance of Mr. Dolan's who could testify as to his voice characteristics, and if he did not have such a speech impediment, that person

could have testified, but none was called.

> "(following defense counsel's closing argument suggesting a reason for the defendant to be driving near the truck stop) The same remark might be made of the fact that the defense called no witnesses, to say that Chuck Dolan wasn't there that night--"

Counsel for defendant objected contending the remarks of the prosecution prejudiced defendant. Following this objection, the court reminded the jury to follow only its instructions on the law.

These remarks do not constitute reversible error under the test of prosecutorial comment we employed in State v. Anderson (1970), 156 Mont. 122, 476 P.2d 780:

> "The test is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify."

The remarks made here are similar to the remarks used in State v. Armstrong (1976), 170 Mont. 256, 552 P.2d 616. In Armstrong, this Court acknowledged the prosecution's right to stress the strength of its own evidence:

> "While it is true that the county attorney often asked rhetorical questions which amounted to comments that there was 'no evidence' or 'no testimony' to rebut the inferences raised by the state's evidence, nowhere does it appear that these comments would necessarily imply that defendant was the only source which could negate state's evidence. The most that can be said of the county attorney's comments is that they referred to the fact that the defense presented no case at all. Certainly the prosecution, as an adversary for the state, cannot be prohibited from arguing the strength of its case to the jury. The manifest fact that the defense presented no testimony of its own may be detrimental to the defendant, but such fact cannot deny the prosecution its right to stress the strength of its own evidence. (Citation omitted.)"

For the reasons included above, we affirm the judgment of the District Court.

Affirmed.

_____
                Justice

-11-

We Concur:

_Frank I. Haswell_
Chief Justice

_John Conway Harrison_
Justice

Mr. Justice Daniel J. Shea dissents and will file a written dissent later.