No. 14656

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

MICHAEL KEVIN KYLE,

Defendant and Appellant.

---

Appeal from:  District Court of the Eighth Judicial District,
In and for the County of Cascade
Honorable Joel G. Roth, Judge presiding.

Counsel of Record:

For Appellant:

Daniel Donovan argued, Great Falls, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
John Maynard argued, Assistant Attorney General, Helena,
Montana
J. Fred Bourdeau, County Attorney, Great Falls, Montana

---

Submitted:  March 24, 1981

Decided:  April 20, 1981

Filed:  APR 20 1981

_Thomas J. Kearney_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

On September 11, 1980, this Court granted defendant Michael Kevin Kyle's petition for rehearing of his appeal decided by this Court. See, State v. Kyle (No. 14656, Decided August 13, 1980, 37 St.Rep. 1447.) In our order granting rehearing, we limited the issue for review to whether the Sandstrom jury instruction, given at defendant's District Court trial, amounted to prejudicial constitutional error. We hold that the use of the instruction was error and we reverse the judgment of the District Court.

The facts presented at defendant's trial, leading to his conviction of theft and burglary, are provided in our opinion in defendant's appeal:

> "At approximately 11:00 p.m. on the night of
> March 15, 1978, Sergeant Bowen of the Great
> Falls Police Department observed a pickup
> truck parked in the emergency lane of Tenth
> Avenue South in Great Falls. Slowing to
> investigate, Bowen observed the defendant,
> Michael Kevin Kyle, standing in the open doorway
> of a mobile home. The mobile home was situated
> about five to ten feet from the pickup, on a
> mobile home sales lot. The defendant was holding
> what appeared to be a bundle of clothing or bedding.
> Sergeant Bowen radioed for assistance. He then
> proceeded to turn his patrol car around and parked
> in a position to observe defendant. Defendant
> drove off in the truck and Sergeant Bowen stopped
> him about six blocks away, at which time Bowen noted
> items of bedding in the cab of the truck, and bed
> springs, pillows, and other bed parts in the back
> of the truck. The defendant was subsequently arrested
> and charged with burglary and theft." State v. Kyle
> (1980), 37 St.Rep. at 1448.

Throughout the trial, defendant relied on two defenses to assert his innocence to the burglary and theft charges:

1. Theft from an unsold, unoccupied mobile home is not theft from an "occupied structure" as the term is used in the burglary statute (section 45-6-204, MCA); and,

2. Defendant did not purposely or knowingly commit the alleged crimes because he was in a "voluntary intoxicated

condition" at the time the incident occurred, depriving him of the mental capacity to appreciate the criminality of his conduct (section 45-5-203, MCA.)

In his appeal to this Court, defendant argued that the mobile home involved did not satisfy the burglary statute's "occupied structure" requirement. We disagreed, holding that theft from the mobile home constituted theft from an occupied structure. Defendant did not raise the voluntary intoxication issue or the Sandstrom instruction issue in his appeal. The trial court record reveals however, that defendant's mental state was a crucial issue before the District Court.

At trial, defendant claimed that two days before the burglary occurred, he had attempted suicide by ingesting approximately 50 tablets of Valium-5. Defendant testified this suicide attempt affected his normal thought processes. Defendant told the jury that he could not remember the events of the night of the burglary. Defendant said he could not explain his actions after the suicide attempt, and could remember only experiencing periods of drowsiness and lethargy until the morning after the burglary. Defendant's account of his behavior and the aftereffects of the overdose was corroborated by testimony given from members of defendant's family. In order to rebut this evidence, the prosecution presented evidence that defendant acted normally following the suicide attempt. The prosecution asked each of the police officers involved with defendant's capture and arrest to describe defendant's mental state to the jury. Each officer testified that defendant seemed to be mentally alert and coherent during the night of the burglary.

Following the presentation of evidence at the trial, the District Court judge and counsel adjourned to chambers to devise instructions of law for the jury. The prosecution's

proposed instruction no. 7 was offered and unopposed, and was later read to the jury: "You are instructed that the law presumes that a person intends the ordinary consequences of his voluntary acts."

We hold that the use of this _Sandstrom_ instruction in this case amounts to prejudicial constitutional error.

In 1979, the United States Supreme Court discussed the constitutional ramifications of instructing the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts." Sandstrom v. Montana (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39. In Sandstrom v. Montana, the Supreme Court examined this instruction as a reasonable juror might interpret its meaning. The Court held the instruction could violate a criminal defendant's constitutional right to due process, given a jury's interpretation of the instruction. If the jury interprets the instruction either as a conclusive presumption in favor of the prosecution on the element of intent, or as a mechanism to shift the burden of proof of intent to the defendant, requiring him to prove that he lacks the requisite _mens_ _rea_, the instruction violates the Fourteenth Amendment's requirement that the prosecution prove every element of a criminal accusation beyond a reasonable doubt. Mullaney v. Wilbur (1975), 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508; In re Winship (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368.

The Supreme Court remanded the case to this Court for its consideration of the effect of the use of the instruction. On remand, we ordered that David Sandstrom be retried, finding that we could not assert beyond a reasonable doubt that the use of the instruction was not error. State v. Sandstrom (1979), ____ Mont. ____, 603 P.2d 244, 36 St.Rep. 2099.

-4-

Since the delivery of our second Sandstrom decision, this Court has discussed the prejudicial nature of the instruction in a number of cases. See, e.g. Parker v. Crist (1980), ____ Mont. ____, 621 P.2d 484, 37 St.Rep. 2048; State v. Dolan (1980), ____ Mont. ____, 620 P.2d 355, 37 St.Rep. 1860; State v. Wogamon (1980), ____ Mont. ____, 610 P.2d 1161, 37 St.Rep. 840; State v. Poncelet (1980), ____ Mont. ____, 610 P.2d 698, 37 St.Rep. 760; State v. Sunday (1980), ____ Mont. ____, 609 P.2d 1188, 37 St.Rep. 561; State v. Fitzpatrick (1980), ____ Mont. ____, 606 P.2d 1343, 37 St.Rep. 194; State v. Hamilton (1980), ____ Mont. ____, 605 P.2d 1121, 37 St.Rep. 70; and State v. Bad Horse (1980), ____ Mont. ____, 605 P.2d 1113, 37 St.Rep. 45. We first determine whether the use of the instruction was error. If there was error, we next examine the case to determine whether the error could have reasonably contributed to the jury verdict, causing prejudice to defendant. In only a few cases have we found prejudicial error in the use of the instruction.

In a number of cases in which Sandstrom instructions were given to the jury, we have found no error. See, State v. Bad Horse, supra; State v. Fitzpatrick, supra. In these cases, we held that the Sandstrom instruction and accompanying jury instructions, raised only a "permissive inference" rather than a conclusive presumption regarding defendant's mental state not affecting the prosecution's burden of proof. The employment of a Sandstrom-type instruction never operated to shift the burden of proof of intent to defendant. The defendant's due process guarantees were never violated under the reasoning of the United States Supreme Court's holding in Ulster County Court v. Allen (1979), 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777.

In State v. Sunday, supra, we held that the use of a Sandstrom-type instruction was irrelevant and could not amount to constitutional error.  In the Sunday case, there was no issue of intent for the jury to decide.  In Sunday, defendant admitted to killing the victim, but claimed self-defense. The jury was not called upon to decide as an issue of fact whether Sunday possessed the requisite intent to commit criminal homicide.  In Sunday, the Supreme Court's analysis in Sandstrom v. Montana was not relevant to the issues reviewed on appeal.

In other cases, we have held that the use of a Sandstrom-type instruction was constitutional error.  We reversed the District Court if that error was not harmless.  In our second Sandstrom opinion, we explained our analysis for harmless error as follows:

> "Before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.  Chapman v. State of California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.  In so holding, the Supreme Court in Chapman reaffirmed its holding in Fahy v. State of Connecticut (1963), 375 U.S. 85, 86-87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171, 173:  '[t]he question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'

> "Under Fahy and Chapman, unless we can find harmless error, the conviction must be reversed. To constitute harmless error, we must be able to assent as a Court that the offensive instruction could not reasonably have contributed to the jury verdict.  In considering the instruction, and the fact that intent was the main issue in the District Court trial, we cannot make that assertion."  (Emphasis added.)

In State v. Hamilton, supra, and in State v. Dolan, supra, we held that the use of a Sandstrom-type instruction was error, but that the error was harmless.  In both cases, we carefully reviewed the record and found that the use of the instruction could not reasonably have contributed to the jury verdict because the evidence of intent was overwhelming.

-6-

The instruction's probable impact upon the jury, given the overwhelming evidence, was so unsubstantial that the use of the instruction constituted harmless error.

In State v. Poncelet, supra, and State v. Wogamon, supra, we held that the use of a Sandstrom-type instruction was prejudicial error and reversed the judgment of the District Court. In both cases, the instruction was not worded to be merely a permissive inference and the use of the instruction was not properly explained to the jury in other instructions. In both cases, defendant's intent was a crucial fact question and the evidence of intent was not overwhelming.

The Sandstrom question presented by this case is identical to the questions presented in Poncelet and Wogamon. Permissible use of the Sandstrom-type instruction was not properly explained to the jury by the jury instructions given in these cases. None of the instructions contained language explaining that the Sandstrom instruction is merely a permissive inference that does not act to shift the mental state burden of proof to defendant. The jury could have easily viewed the instruction as mandatory and the instruction could have had a critical effect in its deliberations. Sandstrom v. Montana, supra. (J. Rehnquist, concurring.) The use of the instruction was error.

Further, the error cannot be labeled harmless. In this case, as in Poncelet and Wogamon, the question of intent was a crucial fact question and the evidence of intent in this case was not overwhelming. We cannot assert that the error could not have reasonably contributed to the jury's verdict.

We reverse the judgment of the District Court and remand this case for a new trial.

_John C. Sheehy_
Justice

We Concur:

_Frank I. Haswell_
Chief Justice

_____

_John Conway Harrison_
_____

_____

_____
Justices

-8-