No. 99-140

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 258


TOWN OF COLUMBUS,

Plaintiff and Respondent,

v.

LOREN ROBERT HARRINGTON,

Defendant and Appellant.

APPEAL FROM: District Court of the Twenty-Second Judicial District,

In and for the County of Stillwater,

Honorable Maurice R. Colberg, Jr., Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Gary R. Thomas, Thomas Law Office, Red Lodge, Montana

For Respondents:

Honorable Mike McGrath, Attorney General; C. Mark Fowler,

Assistant Attorney General, Helena, Montana

Douglas D. Howard, Town Attorney, Columbus, Montana

Submitted on Briefs: March 22, 2001
Decided: December 11, 2001

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Loren Robert Harrington (Harrington) appeals from a jury verdict, judgment and sentence of the Twenty-Second Judicial District, Stillwater County, convicting him of Driving Under the Influence of Alcohol (DUI), a misdemeanor. We affirm.

¶2 We re-state the issues on appeal as:

¶3 1. Whether Harrington's rights to due process and privilege against self-incrimination were violated and whether these issues are reviewable under the common law plain error doctrine.

¶4 2. Whether the District Court erred by allowing Officer Newell to read statements from non-admitted documents into evidence and by admitting the results of the preliminary alcohol screening test (PAST).

¶5 3. Whether the jury instructions, reviewed as a whole, fully and fairly presented the law to the jury.

## FACTS AND PROCEDURAL BACKGROUND

¶6 On the evening of February 21, 1998, Town of Columbus police officer Scott Newell observed a pickup being driven by Harrington. After the pickup crossed over the center line, Newell began following it. He observed the pickup drift to the right, then back over the center line, make a wide left turn and then cross over the center line again. The pickup then came to a complete stop in a 45 m.p.h. speed zone. At that point, Newell turned on his overhead lights, and the pickup stopped at the end of a McDonald's parking lot. Harrington was in the pickup with his two children, ages three and six. Newell asked Harrington for his driver's license, vehicle registration and proof of insurance. Next he asked Harrington to get out of the pickup and perform some field sobriety tests.

Harrington's eyes appeared to be bloodshot, his speech was slurred and he leaned on the door of the pickup and swayed on his first couple of steps. Newell could smell alcohol on his breath. After Harrington performed the sobriety tests, Newell read him Miranda warnings and Harrington chose to remain silent. Harrington was arrested for DUI.

¶7 A jury trial was held in December 1998, and the jury convicted Harrington of DUI. The District Court entered judgment and sentenced Harrington to a term of imprisonment of 60 days with all but 24 hours suspended. Harrington's driving privileges were suspended for six months, and he was required to pay a $350 fine and enroll in and successfully complete an alcohol treatment program.

¶8 This appeal followed.

## DISCUSSION

### Issue 1

¶9 Were Harrington's rights to due process and privilege against self-incrimination violated and are these issues reviewable under the common law plain error doctrine?

¶10 Harrington argues that his due process right and his privilege against self-incrimination were violated by testimony elicited and statements made by the prosecutor during the trial. Specifically, he objects to: 1) the prosecutor's statement to the jury during voir dire that "Harrington does not have to present any evidence in this case, doesn't have to take the stand. . . . He can take the stand if he wants to. He can present witnesses on his behalf, but he doesn't want to. I'm sorry, doesn't have to;" 2) testimony on direct examination of Newell that he advised Harrington of his Miranda rights and that Harrington invoked those rights; 3) testimony on cross-examination of Newell in which he stated it was "after he had invoked his rights, so it would have been improper for me to ask him a question;" 4) the prosecutor's comment in closing that there was no contradictory evidence to Newell's testimony about what he observed; 5) the prosecutor's remark in closing that he and Newell are part of a statewide team "that's concerned about DUI detection and DUI enforcement. . . . So in effect myself, Officer Newell, we're representing the citizens of this town, but I-and what we're trying to do is enforce and prosecute DUI laws not only for the protection of the citizens of this town, but the citizens everywhere that might be using the highways;" and 6) the prosecutor's comments regarding the defense and its counsel during closing, for example, "I think you'll hear from

Mr. Thomas anything's possible. That would be the defense, the argument, the anything-is-possible defense." None of these remarks were objected to at trial.

¶11 The general rule is that the defendant is limited to those issues that were properly preserved in the district court. *State v. Baker*, 2000 MT 307, ¶ 12, 302 Mont. 408, ¶ 12, 15 P.3d 379, ¶ 12. Harrington argues, though, that this Court should review these errors under the common law plain error doctrine we articulated in *State v. Finley* (1996), 276 Mont. 126, 915 P.2d 208. In *Finley*, this Court held that it

> may discretionarily review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made and notwithstanding the inapplicability of the § 46-20-701(2), MCA, criteria, where failing to review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.

*Finley, 276 Mont. at 137, 915 P.2d at 215.*

¶12 When we determine the applicability of the common law plain error doctrine, we consider the totality of the circumstances in each case. *Baker*, ¶ 13. The plain error rule is reserved for exceptional cases and should be used sparingly. When invoking this doctrine, the Court evaluates the nature of the constitutional rights implicated, and not the sufficiency of the evidence. *Baker,* ¶ 13.

¶13 Harrington's issues 1 through 4 implicate his Fifth Amendment right to remain silent and his right to due process. We have held that these are fundamental constitutional rights and are therefore subject to review under the plain error doctrine. *Finley*, 276 Mont. at 138, 915 P.2d at 216. *See also State v. Sullivan* (1996), 280 Mont. 25, 32-33, 927 P.2d 1033, 1038. We conclude that Harrington's objections 5 and 6 do not implicate constitutional rights and therefore will not be reviewed.

¶14 Harrington argues that the prosecutor's comments concerning his post-Miranda silence made during voir dire and closing argument and the testimony elicited during the State's case-in-chief violated his right to due process of law as set forth in *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91.

¶15 In *Doyle*, the United States Supreme Court held that a prosecutor's use for

impeachment purposes of a defendant's silence maintained after Miranda warnings was fundamentally unfair because Miranda warnings inform a person of his right to remain silent and assure him that his silence will not be used against him. *Sullivan,* 280 Mont. at 33, 927 P.2d at 1038 (citing *Doyle*, 426 U.S. at 619, 96 S.Ct. at 2245, 49 L.Ed.2d at 422).

¶16 In *Sullivan*, we held that a prosecutor's comments on post-Miranda silence constituted *Doyle* error. *Sullivan,* 280 Mont. at 35, 927 P.2d at 1039. In that case, during his opening, the prosecutor said, "The defendant . . . refused to give a statement at first when advised of his rights." During direct examination, the detective stated, "I read an adult waiver form to him, essentially advising him of his Miranda rights. I asked him if he would be willing to speak with me and give a statement at that time. He refused." During closing the prosecutor posed the following rhetorical question to the jury, "wouldn't you want to tell somebody it was an accident? . . . [Sullivan] has the better part of twenty-four hours to turn himself in and then another twenty-four hours before he gives a statement." *Sullivan,* 280 Mont. at 30-31, 927 P.2d at 1036.

¶17 In contrast, here the prosecutor's comments during voir dire generally referred to the fact that Harrington did not have to testify, and Newell's testimony simply stated that Harrington was given the Miranda warning and then heeded it. No comment was made that Harrington at any time refused to give a statement or refused to testify. Contrary to the situation in *Sullivan*, the prosecutor did not insinuate that an innocent person would have given a statement or would have testified. We hold that the prosecutor's comments and the testimony elicited during the State's case-in-chief did not constitute *Doyle* error.

¶18 The Fifth Amendment guarantees an accused the right to remain silent during his criminal trial, and prevents the prosecution from commenting on the silence of a defendant who asserts the right. *Finley*, 276 Mont. at 141, 915 P.2d at 217. Article II, Section 25 of the Montana Constitution guarantees the same right. The Montana constitutional guaranty affords no greater protection than that of the federal constitution. *State v. Dawson* (1988), 233 Mont. 345, 356, 761 P.2d 352, 359. Prosecutorial comments deny the accused this privilege when the language used is manifestly intended or is of such character that the jury would naturally and necessarily take it as a comment on the failure of the accused to testify. *Dawson,* 233 Mont. at 356, 761 P.2d at 359 (quoting *State v. Anderson* (1970), 156 Mont. 122, 125, 476 P.2d 780, 782).

¶19 Here, the prosecutor commented during his rebuttal argument that "there wasn't contradictory evidence to Officer Newell's testimony about what he observed about the

driving, and driving is what it's about." Harrington points out that he is the only person who could have offered contradictory evidence. His two minor children were the only others present, besides himself and Newell.

¶20 In 1969, this Court considered a similar issue. *State v. Hart* (1969), 154 Mont. 310, 462 P.2d 885. In that case, the defendant did not testify and during closing, the prosecutor stated that "[Defendant's attorney] has not seen fit to offer any evidence to controvert this story." *Hart*, 154 Mont. at 312, 462 P.2d at 887. The Court stated that "unless it is apparent on the record that there was someone other than himself whom the defendant could have called, the comment of necessity pointed to the only person who could have offered the contradiction, the defendant himself." *Hart,* 154 Mont. at 314, 462 P.2d at 888 (quoting *Desmond v. United States* (1st Cir. 1965), 345 F.2d 225, 227). The Court held that the prosecutor's comments were prejudicial as a violation of the Fifth Amendment and stated, "To take the view that the prosecution may not comment on the defendant's failure to testify, but may properly comment on the defendant's attorney's failure to offer evidence, where that could only come from the defendant himself, is to make an unwarranted distinction not permissible in law." *Hart,* 154 Mont. at 315-16, 462 P.2d at 888.

¶21 The State fails to address *Hart*, but argues the comment only emphasized the strength of the prosecution's case and not the defendant's failure to take the stand. We have approved statements by the county attorney which argue that there is "no evidence" or "no testimony" to rebut the inferences raised by the State's evidence, and we have held that these statements do not constitute a comment on the failure of the defendant to testify. *State v. Armstrong* (1976), 170 Mont. 256, 552 P.2d 616. In *Armstrong*, the State called 39 witnesses, and the defense called none. Unlike *Hart*, the defendant in *Armstrong* could have called any number of witnesses to rebut the State's evidence. In *Dolan*, we found no error in a prosecutor's comment that, "Surely there must be someone . . . who could testify as to [defendant's] voice characteristics." *State v. Dolan* (1980), 190 Mont. 195, 205, 620 P.2d 355, 360. Again, though, the comment referred to testimony from someone other than the defendant. This is the first time since *Hart* where we are confronted with a prosecutor's comment that the State's evidence is uncontradicted and the defendant was the only person who could have offered contrary evidence. The State argues that Harrington's two children, ages 3 and 6, were present and could have contradicted Newell's testimony. The State cites Rule 601(a), M.R.Evid., that "every person is competent to be a witness." Indeed, we have held that there is no age requirement before a person is considered competent to testify. *State v. Olson* (1997), 286 Mont. 364, 371, 951 P.2d 571, 575.

However, we cannot agree that these children could have offered testimony to contradict Newell concerning their father's driving ability. Harrington was the only person present who could have contradicted Newell. We therefore conclude that the prosecutor's comment was error as an improper reference to the defendant's decision not to testify.

¶22 The State argues that if we conclude that error occurred, it was harmless in light of the overwhelming evidence of Harrington's guilt. We recently rejected the overwhelming evidence test in evaluating harmless error and adopted a two-step analysis to determine whether an error prejudiced a criminal defendant's right to a fair trial and is therefore reversible. *State v. Van Kirk*, 2001 MT 184, ¶ 37, 306 Mont. 215, ¶ 37, 32 P.3d 735, ¶ 37. The first step is to determine whether the error is a structural error or a trial error. *Van Kirk*, ¶ 37. Structural error is typically of constitutional dimensions, precedes the trial, and undermines the fairness of the entire proceeding. *Van Kirk*, ¶ 38. Structural errors are automatically reversible. *Van Kirk*, ¶ 39.

¶23 Trial errors typically occur during presentation of the case to the jury and are subject to review under the harmless error statute, § 46-20-701(1), MCA. *Van Kirk*, ¶ 40.

¶24 The prosecutor's improper comment occurred during presentation of the case to the jury; therefore, we conclude it was a trial error and is subject to harmless error review. The test of prejudicial error is whether there is a reasonable possibility that it might have contributed to a conviction. *Van Kirk*, ¶ 42. In *Van Kirk*, the error concerned inadmissible evidence and we adopted a cumulative evidence test in answering that inquiry. *Van Kirk*, ¶ 43. That test looks to whether the fact finder was presented with admissible evidence that proved the same facts as the tainted evidence. **Van Kirk**, ¶ 44.

¶25 The cumulative evidence test is not applicable where the error concerns comment and not evidence. Therefore, we look to whether there is a reasonable possibility that the error contributed to the conviction.

¶26 During his closing, the prosecutor focused on the driving errors Harrington made before he was stopped by Newell, the videotape of his performance on the one leg stand and walk and turn field sobriety tests, Newell's expertise, and the results of the preliminary breath test. The single comment that the evidence was uncontradicted was an isolated one and there is no reasonable possibility that it may have contributed to Harrington's conviction. We hold that the error was harmless.

## Issue 2

¶27 Did the District Court err by allowing Newell to read statements from non-admitted documents into evidence and by admitting the results of the preliminary alcohol screening test (PAST)?

¶28 Harrington argues that during his direct testimony, Newell read a document, his arrest report, into evidence. When the prosecutor was questioning Newell about what led up to Harrington's arrest, Harrington objected stating, "There's been no indication, as in Rule 612, that he requires something . . . to refresh his memory as he's testifying. He's basically reading from a report." After objection, the prosecutor asked Newell, "would it help you to be able to refer to your report to refresh your recollection in this matter?" Newell replied, "I can testify without the report if I may periodically refer to it." Later in his testimony, the prosecutor asked Newell what he observed during Harrington's performance of the "walk-and-turn" test. Newell asked, "If [defense attorney] has no objections, may I use my notes from my report to refresh my memory?" Defense counsel responded, "If he has to, he has to."

¶29 On appeal, Harrington argues that the testimony was inadmissible because the foundation required by Rule 803(5), M.R.Evid., was not met. The State argues that Harrington did not raise Rule 803 at trial, and, therefore, he cannot assert it on appeal. Harrington contends that although he stated the wrong rule number at trial, the substance of his objection concerned the foundation required under Rule 803, M.R.Evid. We conclude that Harrington's objection at trial was sufficient to implicate the foundational requirements of Rule 803, M.R.Evid.

¶30 Questions of admissibility of evidence are left to the sound discretion of the trial court, and are subject to review only in the case of manifest abuse. *Jim's Excavating Service, Inc. v. HKM Associates* (1994), 265 Mont. 494, 506, 878 P.2d 248, 255.

¶31 Rule 612, M.R.Evid., permits witnesses to use writings to refresh their memory while testifying. *Watkins v. Williams* (1994), 265 Mont. 306, 312, 877 P.2d 19, 22. The Commission Comments to the rule note that:

> At the outset, it is important to distinguish between writings used to refresh the memory of a witness, which are governed by this rule, and writings denominated as recorded recollection, which are governed as a hearsay exception under Rule 803(5).

A writing used to refresh memory is one that is meant to help a witness who has a memory of the subject of his testimony, but who needs a stimulus in order that his memory be revived. The witness can then testify independently of the writing, and it is his memory or recollection which is used as evidence and not the writing. A recorded recollection is a writing made by or for the witness about a subject of which the witness retains no independent recollection.

In discussing the foundation required by Rule 612, M.R.Evid., the Commission took note that a previous statute and case law required a foundation showing that "the writing must have been made by the witness or under his direction, at a time when the event occurred or when the facts were fresh in the witness' memory, and that the witness must have known the writing to correctly state the facts," and stated that "[t]his is inconsistent with the common-law doctrine . . . The common-law doctrine has been revived by later Montana cases. . . . The foundation is a matter addressed to the trial court, and it is within the trial court's discretion to permit the witness to refresh his memory."

¶32 It is obvious from the trial transcript that Newell was using the report to refresh his memory. We hold that the District Court did not abuse its discretion by allowing Newell to use his report to refresh his memory, as permitted by Rule 612, M.R.Evid.

¶33 Harrington also raises several objections to the use of the results of the Preliminary Alcohol Screening Test (PAST) at trial. He filed a Motion in Limine in District Court, arguing that the PAST results should be excluded because Rule 23.4.201(7)(b), ARM, limited use of PAST results to probable cause determinations only. The State argued that a 1997 amendment to § 61-8-404, MCA, superseded the administrative rule and allowed for use of PAST results at trial. The District Court denied Harrington's motion in limine and allowed the prosecution to enter an estimate of the PAST results into evidence at the trial.

¶34 Preliminary alcohol screening tests fall under the definition of associated equipment in Rule 23.4.201(7)(b), ARM. The Rule states that "[a]nalysis from this type of device, e.g. a preliminary breath tester, are to be considered as probable cause evidence only." The Rule was enacted on December 31, 1995, and has not been amended or repealed.

¶35 Section 61-8-404(b), MCA, provides that "a report of the facts and results of one or more tests of a person's blood or breath *is admissible in evidence* if: (i) a breath test or *preliminary alcohol screening test* was performed by a person certified by the forensic sciences division of the department to administer the test." (Emphasis added.) The 1997

Legislature inserted the reference to a preliminary alcohol screening test.

¶36 An agency's rules are valid only if they are "consistent and not in conflict with the statute." *Safeway, Inc. v. Montana Petroleum Release Comp. Bd.* (1997), 281 Mont. 189, 194, 931 P.2d 1327, 1330, citing § 2-4-305(6)(a), MCA.

¶37 We conclude that the portion of Rule 23.4.201(7)(b), ARM, which states that analysis from preliminary breath tests may be considered as probable cause evidence only, is inconsistent and in conflict with the amended portion of § 61-8-404(b), MCA. Accordingly, we hold that the District Court was correct in not excluding the PAST results based on Administrative Rule 23.4.201(7)(b).

¶38 Harrington also objected at trial that a proper foundation had not been laid for the PAST results. After a short recess, and outside of the presence of the jury, the prosecution recalled Newell to the stand to lay a proper foundation. Newell testified from a training manual he had received in April 1998 to show that the model used for the PAST had been approved. Harrington objected to this testimony as hearsay and also objected that the document was dated after Harrington's arrest. The District Court overruled the objections and allowed the testimony. Harrington renews his objections on appeal.

¶39 The determination of whether adequate foundation exists for the admissibility of evidence is within the sound discretion of the district court and is made by the court in accordance with Rule 104(a), M.R.Evid. *State v. Delaney*, 1999 MT 317, ¶ 14, 297 Mont. 263, ¶ 14, 991 P.2d 461, ¶ 14. The rule states, "Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court. In making its determination it is not bound by the rules of evidence except those with respect to privileges." Rule 104(a), M.R.Evid. In *Delaney*, we concluded that the district court could consider hearsay evidence in its determination on whether an adequate foundation existed. We stated that "the plain language of the Rule authorizes a trial court to consider any evidence includ [ing] hearsay and other evidence normally inadmissible at trial." *Delaney*, ¶ 15.

¶40 Newell testified at trial, outside of the presence of the jury, that the specific make and model used for Harrington's PAST was on the approved list distributed by the Montana Department of Justice Forensic Science Division. Sergeant O'Loughlin testified that he had field tested the specific piece of equipment prior to its use on Harrington. We conclude that Rule 104(a), M.R.Evid., authorized the District Court to consider the training manual relied on by Newell.

¶41 Accordingly, we hold that the District Court did not abuse its discretion in admitting the PAST results.

## Issue 3

¶42 Did the jury instructions, reviewed as a whole, fully and fairly present the law to the jury?

¶43 Harrington objects to two instructions given to the jury. The first, denominated Instruction No. 3 by the District Court, stated:

> A witness who by education and experience has become an expert in any art, science, profession, or calling may be permitted to state his opinion as to a matter in which he is versed and which is material to the case, and may also state the reasons for such opinion. You should consider each expert opinion received in evidence in this case and give it such weight as you think it deserves; and you may reject it entirely if you conclude the reasons given in support of the opinion are unsound.

¶44 The State offered this instruction, asserting that it was appropriate because the officers who testified, in particular Newell, had specialized training as part of their profession. Harrington argues that there is no authority for the proposition that peace officers are experts within the meaning of the instruction. The District Court gave the instruction and noted that Newell testified that he had training, and he scored certain results on two tests.

¶45 The district court has broad discretion in formulating jury instructions. *State v. Goulet* (1997), 283 Mont. 38, 41, 938 P.2d 1330, 1332. A trial court may give a jury instruction when it is relevant to evidence or issues in a case. *State v. Johnson*, 1998 MT 289, ¶ 35, 291 Mont. 501, ¶ 35, 969 P.2d 925, ¶ 35.

¶46 In reviewing a claim which alleged insufficiency of the evidence for a conviction on DUI, this Court noted that "it was the officer's expert opinion that [defendant] was intoxicated." *State v. Brady*, 2000 MT 282, ¶ 24, 302 Mont. 174, ¶ 24, 13 P.3d 941, ¶ 24. The officers who testified at trial here described their educational background, specialized training and experience with field sobriety and breath tests. The instruction at issue informed the jury that they could accept or reject the expert opinions given and that they could give the opinions the weight they thought the opinions deserved. We conclude that the instruction was relevant to evidence and issues in the case.

¶47 Harrington also objects to the portion of the court's Instruction No. 6 which instructed the jury on the inferences contained in § 61-8-401(4), MCA. Harrington argues that these inferences should not apply in this case because the PAST did not establish a particular blood alcohol concentration in the body, but only an estimate of the blood alcohol concentration.

¶48 Section 61-8-401(4), MCA, provides:

> Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person driving or in actual physical control of a vehicle while under the influence of alcohol, the concentration of alcohol in the person at the time of a test, as shown by analysis of a sample of the person's blood or breath drawn or taken within a reasonable time after the alleged act, gives rise to the following inferences:

> (a) If there was at that time an alcohol concentration of 0.04 or less, it may be inferred that the person was not under the influence of alcohol.

> (b) If there was at that time an alcohol concentration in excess of 0.04 but less than 0.10, that fact may not give rise to any inference that the person was or was not under the influence of alcohol, but the fact may be considered with other competent evidence in determining the guilt or innocence of the person.

> (c) If there was at that time an alcohol concentration of 0.10 or more, it may be inferred that the person was under the influence of alcohol. The inference is rebuttable.

¶49 As noted earlier, § 61-8-404(1)(a), MCA, permits admission at trial of PAST results. The only qualifier applied to the inferences under § 61-8-401(4), MCA, is that it be "drawn or taken within a reasonable time after the alleged act." Here, the jury was separately instructed that the PAST results provide only an estimate of alcohol concentration. The instruction Harrington objects to also informed the jury that the inference was permissive and rebuttable.

¶50 We hold that the jury instructions fully and fairly informed the jury on the applicable law. The District Court is affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ PATRICIA COTTER